**Exhibit 2**

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR SECTION OF SAN JUAN

| | |
|---|---|
| CELLUSTAR CORP.<br><br>Plaintiff<br><br>v.<br><br>SPRINT CORPORATION; SPRINT SOLUTIONS, INC.; PR WIRELESS PR, LLC; ABC COMPANY AND INSURANCE COMPANIES ABC<br><br>Defendants | CIVIL NO. _____<br><br>VIOLATION OF LAW No. 75 of JUNE 24, 1964; SPECIFIC PERFORMANCE; PRELIMINARY AND PERMANENT INJUNCTION; STATUTORY ATTORNEYS FEES; VIOLATION OF PUERTO RICO ANTITRUST LAWS; VIOLATION OF SHERMAN ACT AND OF ROBINSON-PATMAN ACT; DECLARATORY JUDGMENT; DAMAGES |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW the plaintiff, Cellustar Corp. (hereinafter "Cellustar"), through its undersigned attorneys and, very respectfully states and prays:

### 1.  **THE PARTIES**

1.  The plaintiff, Cellustar is a corporation organized under the laws of Puerto Rico.  Its address is: Sánchez Cataño Ave., corner of Highway #874, Carolina, Puerto Rico 00984.  Its postal address is PMB 2306, PO Box 6092, Carolina, PR 00984-6017. Cellustar is a "distributor" under Law No. 75 of June 24, 1964, as amended, 10 LPRA §§278-278e (hereinafter, "Law 75").

2.  Co-defendant, Sprint Corporation, is a corporation organized under the laws of Delaware, which operates in the

telecommunications industry and that, by information and belief, is authorized to do business in Puerto Rico by itself and through other entities of unknown names. Its address is: 2711 Centerville Road, Suite 400, Wilmington, DE 19808. Its postal address is 6200 Sprint Parkway, Mailstop KSOPHF0302-3B679, Overland Park, KS 66251. By information and belief, its e-mail address is boardinquiries@sprint.com and/or sprintlegalsales@sprint.com.

3.     Co-defendant Sprint Solutions, Inc. is a corporation organized under the laws of Delaware, which operates in the telecommunications industry and distribution of phone equipment and is authorized to do business in Puerto Rico under other entities of unknown name. Its address is 2001 Edmund Halley Drive, Reston, VA 20191-3438. By information and belief, its e-mail address is sprintlegalsales@sprint.com and its phone number is (703) 869-0570.

4.     Co-defendant PRWireless PR, LLC ("PRWireless"), is a limited liability company organized in the State of Delaware and is authorized to do business in Puerto Rico. This company operates and/or handles Sprint's cellular phone services and data, such as Boost Mobile and Open Mobile, in Puerto Rico. Its principal office is located at 251 Little Falls Drive, Wilmington, DE 19808. PR Wireless's offices in Puerto Rico are located at Chrysler Building, Metro Office Park, 1st Street, Suite 300, Guaynabo, PR 00968. Its resident agent is CT Corporation Systems and its address is: 361

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ⎯⎯⎯ June 2019.

San Francisco Street, San Juan, PR  00901.  Its e-mail address is juan.saca@openmobilepr.com.  By information and belief, its phone number is (787) 810-5757.  Sprint Corporation is the owner of PRWireless.

5.  Co-defendant ABC Company is an unknown entity with a fictitious name used by Sprint, its subsidiaries or affiliates to handle and/or assist in its businesses in Puerto Rico.  Upon discovery of the real name of this entity, Complaint will be amended, pursuant to Rule 15.4 of Civil Procedure, 32 LPRA Ap. V.

6.  Sprint Corporation, Sprint Solutions, Inc., PRWireless and ABC Company (jointly, "Sprint") constitute a "principal" under Law 75.

7.  Insurance Companies ABC are entities of unknown fictitious names which provide insurance policies to defendants that could be liable for damages and/or causes of action subject of this litigation.  Upon discovery of the real names of these entities, the Complaint will be promptly amended, pursuant to Rule 15.4 of Civil Procedure, *supra*.

## II.  THE FACTS

8.  Sprint is the owner of the products and prepaid service branded "Boost Mobile."  Boost Mobile provides its telephone services through Sprint's network.

9.  In the year 2011, Sprint introduced its service/product branded Boost Mobile in Puerto Rico, after acquiring Virgin

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ~~~~~~~~ June 2019.

Mobile, a competitor brand of prepaid products and services in the United States.

10.   In January, 2011, Cellustar and Sprint Solutions, Inc. commenced a long-term or self-renewing contractual relationship.

11.   The contractual relationship between Cellustar and Sprint Solutions, Inc. began in January 2011 upon subscribing a Prepaid Wireless Product Agreement (the "Contract") in which Cellustar agreed to become distributor or exclusive master agent of the products and phones of the Boost Mobile brand in Puerto Rico

12.   As part of its contractual obligations, Cellustar was in charge of promoting and distributing prepaid phones and accessories branded Boost Mobile in Puerto Rico and Virgin Islands through independent retailers, who executed contracts with Cellustar for the retail sale of prepaid phones and accessories branded Boost Mobile to the consumers.

13.   The contractual relationship of principal and distributor between Sprint and Cellustar can be described as follows: 1) Cellustar buys prepaid phones and accessories branded Boost Mobile to Sprint; 2) Cellustar takes the risk of loss of the prepaid phones and accessories branded Boost Mobile brand when the purchase is made; 3) Cellustar keeps an inventory of these phones and products on its facilities; 4) Cellustar establishes a retail distributor network for the sale of prepaid phones and

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _____ June 2019.

accessories branded Boost Mobile; 5) Cellustar establishes lines of credit to its retailers that will allow them to buy phones and accessories branded Boost Mobile; 6) Cellustar sells and distributes prepaid phones and accessories branded Boost Mobile to its retailers; 7) Cellustar receives an additional compensation from Sprint for the consumers that buy phones branded Boost Mobile from Cellustar's contracted retailers; and 8) Cellustar conducts promotions and marketing events of the Boost Mobile products independently and jointly with its retailers and Sprint.

14.   Originally, VIP Wireless and Actify LLC ("Actify") began distributing the Boost Mobile brand in Puerto Rico.  Eventually, VIP Wireless withdrew from the market, leaving Actify as the only master agent of said brand.  Nevertheless, and due to the fact that Actify did not make the sales volume expected, Sprint hired Cellustar as a distributor-master agent because this entity and its President had vast experience in the telecommunications market in Puerto Rico and the Virgin Islands.

15.   With time, Cellustar developed and kept growing the sales of Boost Mobile branded prepaid mobile phones and products in Puerto Rico and the Virgin Islands.

16.   Since the beginning of the contractual relationship with Sprint, until the beginning of the year 2018, Cellustar was the largest distributor of Boost Mobile phones and products in Puerto Rico.  Cellustar ended the year 2011 with 32 retailers of Boost

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.  ⟶ June 2019.

Mobile phones and products under contract and for the year 2017 Cellustar already counted with 84 retailers under contract selling Boost Mobile phones and products in all the Puerto Rico territory and the Virgin Islands. At the beginning of the year 2018, Cellustar was responsible that there were around 40,000 consumers using Boost Mobile prepaid phones in Puerto Rico.

17. In spite of the big development reached by Cellustar in the sale of the Boost Mobile products and phones, Sprint started to carry out acts of impairment in the existing distributor relationship. Its intention was to strip away from Cellustar the distribution of the Boost Mobile products and phones in Puerto Rico to make its competitors Actify, or Sprint, take care of said distribution; taking advantage of the development of the brand that Cellustar had achieved since 2011.

A.   <u>Discrimination in transportation charges</u>

18. As described before, Cellustar buys prepaid Boost Mobile telephones through Sprint. This is the only way Cellustar can buy those telephones.

19. In principle, Sprint assumed the transportation costs of the Cellustar-acquired phones for sale to its retailers in Puerto Rico.

20. Nevertheless, Sprint started to charge a transportation cost of approximately $2.00 for each Mobile Boost phone bought by Cellustar, in addition of the purchase price of each phone.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ~~~~ June 2019.

21.   This new charge made the total cost of the phone higher than the price paid by the consumers at the time of the Boost Mobile phone purchase.

22.   Cellustar learned several months later that Sprint did not impose, nor was charging this transportation cost to Actify.

23.   Actify is a national distributor of Boost Mobile phones that also operates as a master agent for Sprint in Puerto Rico.

24.   This unequal treatment not only caused losses to Cellustar that Actify did not have to bear, but it also caused that the retailer with the most sales of Boost Mobile phones in Puerto Rico back then, Fivestar Enterprises ("Fivestar"), requested Sprint and Sprint granted a change in the distributor-master agent, from Cellustar to Actify.  The reason Fivestar gave to change distributor was that Sprint was not charging Actify this transportation cost and that, therefore, could buy the phone at a lesser cost.

25.   Upon performing this change of distributor/master agent to Fivestar, Cellustar lost approximately 30% of the income gained through the sales made by its retailers.

26.   Sprint never indemnified or compensated Cellustar for this loss.

27.   Sprint violated its contractual and legal obligations to Cellustar and kept an unequal and unjustified treatment of prices between Cellustar and Actify in violation of Law 75, antitrust

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.   _Moises S. Her_   June 2019.

laws and other legal provisions upon giving Actify more favorable prices than to Cellustar.

B.   Inventory restriction

28.  Sprint gradually started to limit the provision of phone inventory to Cellustar and its retailers.

29.  On several occasions, when Cellustar placed purchase orders of prepaid phones, Sprint, without motive or explanation, would not honor the purchase orders or severely limited the availability of phones to Cellustar.

30.  This inventory restriction was evident with the phones on promotion and, particularly, with phones where Sprint would assume the total or partial cost of the phone as part of the promotion, which greatly attracts the consumer.

31.  The phones where Sprint assumes total or partial cost as part of a promotion are always the phones with the most sales in Puerto Rico.

32.  Meanwhile, Sprint did not limit the inventory to the only competitor of Cellustar in Puerto Rico, Actify. Actify always counted with an unrestricted inventory, particularly of the phones under promotion, which were precisely the ones restricted by Sprint to Cellustar.

33.  Actify is a subsidiary of Ingram, the entity which handles the inventory of Sprint prepaid phones in the United States.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _____ June 2019.

34.   The preferential and/or discriminatory treatment by Sprint in their provision of phone inventory provoked a progressive and artificial increase in Actify and its retailers' sales and clients, and a decrease in sales and clients of Cellustar and its retailers.   Progressively, the idea developed among Boost Mobile clients that the retailers of Actify have a greater inventory and better Boost Mobile phones prices/offers than Cellustar.

35.   Even more, on occasions, Sprint requested Cellustar to bear part of the cost of the cell phone equipment as a condition for the sale of said phones to consumers through its retailers. This behavior is also an illegal act on the part of Sprint.

36.   The preferential and/or discriminatory treatment by Sprint in the provision of phone inventory constitutes a violation of Cellustar's contractual and legal rights and an illegal act, which harms the free competition between Cellustar and Actify, and Cellustar retailers, who can only purchase Boost Mobile phones from Cellustar.

37.   Sprint violated its contractual and legal obligations toward Cellustar and kept an unequal and unjustified treatment of inventory and promotions available, in violation of Law 75, antitrust laws and other legal provisions on preferential and/or discriminatory treatment when perpetuating a discriminatory phone supply and restricting and/or eliminating the availability of phones to Cellustar.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.  ⎯⎯⎯⎯⎯  June 2019.

C.  <u>Discrimination in the availability of Open Mobile stores</u>

38.  During the year 2017, Sprint announced the purchase of PR Wireless PR LLC ("PR Wireless"), which was doing business in Puerto Rico and Virgin Islands as Open Mobile until then.  Open Mobile was an entity mainly dedicated to the sale of prepaid phones in Puerto Rico.

39.  Both entities would operate under a new company where Sprint and PR Wireless would have a 68% and 32% financial share, and a 55% and 45% voting share in the common enterprise, respectively.

40.  The referenced acquisition meant that the majority of Open Mobile retailers would keep on doing business for Open Mobile in a temporary basis and would then be retailers of Sprint's distributors and/or master agents for the sale of Boost Mobile cell phones.

41.  Cellustar waited for and was willing to accept at least half of the new retailers coming from Open Mobile as well as their new Boost Mobile retailers, as it was the distributor/master agent with more retailers under contract in Puerto Rico.

42.  Nevertheless, instead of providing Cellustar the opportunity of being master agent for the retailers coming from Open Mobile, Sprint, without previous notice of reason, determined that only Actify could be distributor/master agent of the retails coming from Open Mobile for the sale of Boost Mobile phones.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.  June 2019.

Therefore, Sprint impeded that Cellustar could be the distributor/master agent for 100% of the retailers coming from Open Mobile who became Boost Mobile phone retailers ascribed to Actify.

43. The aforesaid represented an automatic increase of nearly 90 retailers to Actify. It was at that moment that Actify, for the first time, exceeded Cellustar in the number of retailers in Puerto Rico.

44. Sprint did not notify or explain to Cellustar at any time the reason to prevent it from becoming the distributor/master agent of the retailers coming from Open Mobile and reserving said retailers exclusively for Actify.

45. Sprint violated its contractual and legal obligations toward Cellustar and maintained an unequal and unjustified treatment between Cellustar and Actify in violation of Law 75, the antitrust laws and other legal provisions, while preventing Cellustar from becoming master agent of the retailers coming from Open Mobile.

D.   Cellustar termination as a distributor

46. Some months later after preventing Cellustar from becoming distributor/master agent of the retailers coming from Open Mobile, Sprint unilaterally and without justification decided to end the relationship of principal/distributor-master agent with Cellustar effective on June 30, 2018.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.  ⟨signature⟩  June 2019.

47.   The reason for this termination was to transfer all the retailers from Cellustar to Actify, reason for which Sprint requested Cellustar its cooperation to perform said transaction.

48.   Nevertheless, on June 11, 2018, Cellustar sent Sprint a notice of cease and desist from the termination because the same was without just cause and in violation of Law 75 of July 24, 1964, as amended.

49.   On June 12, 2017, after receiving from Cellustar the mentioned notice of cease and desist, Sprint desisted from the termination and its plan to transfer retailers from Cellustar to Actify.

50.   Again, Sprint violated its legal and contractual obligations to Cellustar and maintained an unequal and unjustified treatment between Cellustar and Actify upon termination of the relationship with Cellustar in violation of Law 75, antitrust laws and other legal provisions.

51.   The fact that the termination was withdrawn did not prevent Cellustar from being harmed.   Sprint's discrimination in its treatment between Actify and Cellustar continued.

E.   Additional discriminatory treatment from Sprint to Cellustar

52.   Sprint was provided Actify and its retailers a series of incentives, benefits and subsidies to Actify and its retailers, including the payment of rent to certain Actify retailers, that were never available to Cellustar.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ~~~~~~ June 2019.

53.   For example, Sprint sponsored 49 promotional activities during the Christmas period of the year 2018.  Almost none of these promotional activities involved Cellustar or its retailers. Almost all these promotional activities were realized by Sprint for Actify and its retailers.  This shows a clear discriminatory treatment in which Sprint chooses only Actify for promotional activities and denies said opportunities to Cellustar.

54.   In addition, Sprint constantly authorizes Actify retailers to open new Boost Mobile stores in several places throughout Puerto Rico, while it constantly denies the same requests to Cellustar's retailers.  This again shows the clear discriminatory treatment in which Sprint allows only Actify and its retailers to expand their businesses and denies Cellustar such opportunities.

55.  Sprint has also condoned, tolerated and/or allowed Actify retailers which are supposed to only sell Sprint products, to sell products that are not Sprint's, in spite of Sprint having been notified and having knowledge of said actions.

56.   Meanwhile, Sprint has punished Cellustar retailers on the same situation for allegedly having sold products that are not Sprint's and for allegedly not complying with the sales quotas. Again, Sprint shows a discriminatory and preferential treatment in favor of Actify and its retailers.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _____ June 2019.

57.   Moreover, Sprint officials had knowledge that several Actify retailers were fraudulently activating mobile phones and processing them as "port in" to defraud Sprint, give out free of charge cell phones to the consumers with the purpose of artificially increasing its sales to obtain additional compensation from Sprint.   In spite of this, Sprint did nothing against Actify or the other retailers responsible for these fraudulent acts.

58.   Sprint's acts, no doubt, reveal its true intention: to strip away Cellustar from the distribution of its products to keep said distribution and/or granting it to Actify, taking advantage of the brand development that Cellustar has achieved through its efforts.

59.   While affecting and sabotaging with its acts the distribution of Cellustar, Sprint is trying to create an artificial justification to strip Cellustar of its distribution and eventually grant Actify the distribution of all its products in Puerto Rico.

60.   As a consequence of the acts previously recounted, Cellustar has suffered damages estimated in over $7,000,000, including the damages for loss of income.

61.   Cellustar has tried to persuade Sprint to cease its illegal acts that result in the impairment of the contractual distributorship relationship existing between the parties.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court interpreter for Spanish, affirms that this document is a true and correct translation. _Moises S. Hz_   June 2019.

Cellustar even warned Sprint that its acts are contrary to Law 75 and other state and federal laws that protect free trade.  However, Cellustar's warnings have been unsuccessful and Sprint continues with its illegal acts.

### III.  <u>CAUSES OF ACTION</u>

A.  **First Cause of Action:  Damages as a result of impairment of the contractual distributorship relationship under Law 75 and specific compliance of the distribution contract.**

62.  All previous allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

63.  Pursuant to the provisions of Law No. 75 of June 24, 1964 ("Law 75"), 10 LPRA §278 et seq., its provisions are part of the public order and given that the statute's purpose is to repair a harm, the same has to be liberally interpreted to achieve the most effective protection of the rights of the distributors. Article 4 of Law 75, 10 LPRA §278c.

64.  In <u>Next Step Medical Co., Inc. v. Bromedicon, Inc. et al</u>., 190 DPR 477, 489 (2014) the Supreme Court of Puerto Rico explained that:

> Law No.75 was designed with the specific purpose of protecting the legitimate rights of the distributors and redress the harm caused to them.  This, in relation to the abusive practice of principals who, without just cause, arbitrarily harm the contractual relationship with the distributors, as soon as these create a favorable market to its products and services.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ⟶ June 2019.

65.  To these effects, Article 2 of Law 75, 10 LPRA §278a, provides that no principal or grantor can: (1) terminate a distribution contractual relationship without just cause; or (2) directly or indirectly perform any act in detriment of the relationship established; or (3) refuse to renew the contract at its maturity without just cause.

66.  Moreover, Article 2A(b) of said statute provides that it will be assumed that a principal or grantor has harmed the relationship:

> (1) When the principal or grantor establishes in Puerto Rico facilities for the direct distribution of merchandise or to render services that have previously been in charge of a distributor;

> (2) When the principal or grantor establishes a direct relationship with one or more additional distributors of the area of Puerto Rico, or any part of said area, contrary to the existing contract between the parties;

> (3) When the principal or grantor **refuses or skips to serve without justification the purchase orders** sent by the distributor, **in reasonable quantity** and within a reasonable period of time;

> (4) When the principal or grantor unilaterally and irrationally **varies, in detriment of the distributor, the shipment methods, or the form or condition or terms of payment of the ordered merchandise.**

See, 10 LPRA §278a-1 (Emphasis supplied).

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.   _____ June 2019.

67.  As previously stated, Sprint has performed a series of continuous acts in detriment of the principal-distributor relationship with Cellustar, beginning with the charging of transportation costs to Cellustar.

68.  The harm caused by Sprint then continued by:  severely restricting Cellustar's and the retailer's required inventory; limiting Cellustar's participation in the market; prohibiting Cellustar's retailers to open new stores; preventing Cellustar from being the master agent of the Open Mobile acquired stores; trying to cancel Cellustar's contract; failing to provide Cellustar and its retailers the same incentives, subsidies and promotions which benefitted Actify with the purpose of handing over all the distribution in Puerto Rico to that Cellustar's competitor.

69.  The beforementioned acts by Sprint represent clear violations of the provisions of Law 75.  In particular, they constitute harm, termination and/or refusal to renew illegally and without just cause with respect to the distribution relationship existing between them and a non-compliance with the distribution contract.

70.  Moreover, by virtue of Article 2A of Law 75 quoted above, 10 LPRA §278a-1, said acts **activate an immediate presumption of impairment without just cause** against Sprint as Principal that

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. *[signature]* June 2019.

places the burden of proving the lack of harm and just cause for the termination or refusal to renew on Sprint.

71.   Sprint is trying to make what Law 75 expressly prohibits: take away from Cellustar the distribution of its products to take direct advantage of the market achieved by Cellustar for its products.

72.   Article 3 of Law 75 provides that:

> If just cause does not exist for the termination of a distribution contract, for the impairment of the established relationship, or for the refusal to renew said contract, the principal would have executed a tortious act against the distributor and will have to indemnify to the extent of the damages caused.

10 LPRA §278b.

73.   The amount of damages will be determined based on the present value of the investment of the distributor and that cannot be used for any other activity of the distributor, the cost of inventory of the sales that cannot be accomplished, the equity of the business and the amount of the benefits that the distributor has obtained during the past 5 years or 5 times the average of the annual benefit received by the distributor.   _Id_.

74.   The total of the damages that Sprint's illegal acts have caused Cellustar cannot be quantified at this moment, because the same will continue increasing as long as Sprint continues performing said acts.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.  ⟨signature⟩  June 2019.

75. Sprint's acts not only harm the principal-distributor relationship, but also affect the image of Cellustar before its retailers and clients.

76. At this time, the damages that Sprint's acts contrary to Law 75 have caused Cellustar are estimated in no less than $7 million.

77. Sprint is bound to comply with the distributorship contract with Cellustar, and to not discriminate between its distributors, Sprint should be ordered to cease its acts of impairment of the distribution and allow Cellustar to distribute in equal conditions as Actify and/or other distributors.

B. **Second Cause of Action: Provisional remedy, Injunctive Relief, and Preliminary and Permanent Injunction.**

78. All previous allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

79. Article 3-A of Law 75 provides that:

> In any litigation where directly or indirectly the termination of a contract is involved or any act in detriment of the established relationship between the principal or grantor and the distributor, the court may grant during the duration of the proceedings, any provisional remedy or measure of injunctive nature to make it cease or desist from doing, ordering any of the parties or both to continue, in all its terms, the relationship established by means of the distribution agreement, and to abstain of performing any act or omission detrimental to the same. In any case that the provisional remedy herein

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _____ June 2019.

provided the court will consider the interests of all the parties involved and public policy purposes informed of in this chapter.

10 LPRA §278b-1.

80. As mentioned before, Sprint's acts are contrary to Law 75. In fact, the same are the type of acts that Law 75 estimates that are of such magnitude that activate a presumption of impairment to the distribution relationship between the principal (Sprint) and the distributor (Cellustar).

81. In light of the above, it is hereby requested that provisional and injunctive relief be granted during the duration of this litigation, as provided by Article 3-A of Law 75. In particular, it is hereby requested that a preliminary injunction and, eventually, a permanent injunction, be ordered forbidding Sprint to incur into any behavior directed to impair or terminate the distribution relationship with Cellustar.

82. An order is hereby requested to include, without limitation, the following: (i) order Sprint to cease to impose restrictions to Cellustar and its retailers in the supply of inventory and provide inventory equitably to all the retailers; (ii) order Sprint to cease to include the cost of shipment that was previously not collected from Cellustar's retailers; (iii) order Sprint to authorize the opening of stores requested by Cellustar's retailers; (iv) order Sprint to offer and grant Cellustar and its retailers the same benefits, concessions,

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _____ June 2019.

incentives, promotions and treatment that Actify and its retailers receive; and (v) order Sprint to cease any acts directed to impair, rescind or terminate the distributorship agreement with Cellustar.

**C.   Third cause of Action:  Statutory Attorney's Fees under Law No. 75**

83.  All previous allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

84.  Article 7 of Law 75 provides that, in any action brought under this statute, "the Court may allow attorney's fees to the prevailing party, as well as reasonable reimbursement of expert witness fees."  10 LPRA §278e.

85.  At this time, we cannot estimate the amount of said sum, but we hereby request the reimbursement of attorney's and expert witness' fees allowed by Law 75.

86.  Said request is made independently and additionally to the right that Cellustar may have to request costs and attorney's fees for recklessness as prevailing party in these proceedings, as allowed by our procedural system.

**D.   Fourth Cause of Action: Violation of Article 2 of the Antitrust Laws of Puerto Rico, 10 LPRA §258 and Section 1 of the Sherman Act, 15 USC §1.**

87.  All previous allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ⟨signature⟩ June 2019.

88.   Section 1 of Sherman Act provides that:

> ***Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.*** *Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.*

15 USC §1.   (Emphasis supplied).

89.   Similarly, Article 2 of Law No. 77 of June 25, 1964, Antitrust Laws of Puerto Rico ("Puerto Rico Law of Monopolies") establishes that:

> Every contract, combination in trust form or any other form, or conspiracy to irrationally restrict business or commerce in the Commonwealth of Puerto Rico or in any part of this, is hereby declared illegal and every person doing these contracts or compromises in said combinations or conspiracies will incur in a misdemeanor.

10 LPRA §258.

90.   Therefore, an infraction to Article 2 of the Puerto Rico Law of Monopolies is configured when there exists (1) a contract, combination or conspiracy; (2) to unreasonably restrict trade or commerce; (3) in Puerto Rico or any area of the same.   General Gases & Supplies Corp. v. Shoring Sys., 153 DPR 861, 870 (2001).

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.   *[signature]*   June 2019.

91.   Every agreement through which a business that enjoys monopolistic power in a defined market controls production and capacity of production of a competitor is illegal and unreasonable *per se* under the Puerto Rico Law of Monopolies because it lacks every competitive value or quality.  See, <u>General Gases & Supplies Corp.</u>, 153 DPR pages 870-71; <u>Continental T.V., Inc. v. GTE Sylvania Inc.</u>, 433 US 36, 50 n. 16 (1977); United States Department of Justice, Federal Trade Commission, <u>Antitrust Guidelines for Collaborations Among Competitors</u> (April 2000).

92.   Moreover, an agreement allowing a monopolistic merchant control its competitors' production through restrictive clauses that limit the production capacity and sale of a competitor's product, is unreasonable and openly monopolistic under the Puerto Rico Law of Monopolies because it directly affects competition in the market by reducing production and limiting the availability of the product in the market.  See, <u>Pressure Vessels of Puerto Rico v. Empire Gas de Puerto Rico</u>, 137 DPR 497, 511 (1994); <u>Continental T.V., Inc.</u>, 433 US, at page 49.

93.   As previously said, Sprint has conspired to, together with its subsidiaries and/or Actify, unreasonably restrict a defined market, the distribution of telephones in Puerto Rico and, in particular, to attempt to eliminate Cellustar as a Sprint distributor.  The anticompetitive acts hereby described include, without limitation:  (1) restrict the inventory preventing

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ~~~~~~~~ June 2019.

Cellustar and its retailers to be able to pursue their business; (2) limit Cellustar's participation in the market by refusing to authorize Cellustar to be the master agent of new Open Mobile stores and by not authorizing Cellustar retailers to open new stores; (3) increase the cost of the products by including the shipment cost without increasing the cost to competitor Actify; (4) attempt to cancel or rescind the Contract between Sprint and Cellustar; (5) coordinate with Actify the celebration of promotional activities for the only benefit of Sprint and Actify; (6) by contracting with Actify in spite of it being a subsidiary of equipment provider, Ingram, conspiring these parties in detriment of the market and of Cellustar; (7) by agreeing on subsidies, benefits, promotion incentives between Actify and Sprint, to place Cellustar at a competitive disadvantage, in detriment of Cellustar and free trade.

94. All of the above impacted the commercial relationship between Cellustar and Sprint and Cellustar's ability to compete justly and equitably in violation of Article 2 of the Puerto Rico Law of Monopolies, *supra*, and Section 1 of Sherman Act, *supra*.

95. Moreover, an agreement that limits the production of a competitor is equal to an agreement to fix rates and thus, it is illegal *per se*. See, Stop & Shop Supermarket Co. Blue Cross & Blue Shield of R.I., 373 F 3d 57 (1st Cir 2004) ("The most important per se categories are naked horizontal price-fixing, market

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ~~~~~ June 2019.

allocation, and output restrictions"). <u>See</u>, also, <u>U.S. v. Andreas</u>, 216 F 3d 645, 667 (7th Cir 2000) ("Functionally, an agreement to restrict output works in most cases to raise prices above a competitive level").

96.  The inventory limits imposed by Sprint on Cellustar and its retailers have, thus, the effect of unreasonably restricting the market without any competitive benefit or reasonable business justification.  That, together with the increase in prices -- when beginning to charge shipment to Cellustar retailers -- and the rest of the discriminatory acts herein described gave Sprint and the other codefendants the power to eliminate just competition between Cellustar and Actify in the market of prepaid phones in Puerto Rico.

97.  In light of the above, Cellustar requests that this Honorable Court declares illegal every agreement perpetrated by Sprint that is directed to limit competition between Sprint's distributors in Puerto Rico, which contravenes the Puerto Rico Law of Monopolies and antitrust federal laws.

98.  Because of the anticompetitive and illegal acts, Cellustar has suffered and continues to suffer damages that include but are not limited to the large losses in sales, losses in retailers, and loss in the value of its brand as master agent in the market, that are estimated in an amount no less than $7,000,000.00.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. *[signature]* June 2019.

99.   Cellustar has a right to demand, and hereby demands triple compensation for the damages suffered pursuant to the provisions of Article 12 of the Puerto Rico Law of Monopolies, 10 LPRA §268 and the Sherman Act.

**E.    Fifth Cause of Action: Violations to Article 4 of the Puerto Rico Law of Monopolies, 10 LPRA § 260 and of Section 2 of the Sherman Act, 15 USC §2.**

100.  All previous allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

101.  Article 4 of the Puerto Rico Law of Monopolies, equivalent to Section 2 of Sherman Act, provides that an illegal behavior will be incurred by "[a]ny person that monopolizes or attempt to monopolize or that combines or conspires with any other person or persons with the intent to monopolize any part of business or commerce in the Commonwealth of Puerto Rico, or in any sector of such, will be considered guilty to a lesser crime." 10 LPRA § 260.

102.  Therefore, a cause of action is configured because of illegal monopolization when a person or entity monopolizes or attempts to monopolize the market through a predatory, exclusionary, coercive, anticompetitive or discriminatory conduct devoid of any business justification other than an attempt to monopolize the market.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ⁓⁓⁓ June 2019.

103. The above described conduct is illegal *per se*, because it constitutes illegal attempts to monopolize and/or perpetuate its monopoly in the distribution and sale of prepaid mobile phones market of Sprint, Open Mobile and Boost Mobile, which encompass the majority of the prepaid phones market in Puerto Rico and the Virgin Islands.  All this with the purpose of eliminating a competitor, Cellustar, so that Sprint and/or Actify can totally control the supply chain in Puerto Rico, including the distribution and sale of phones.

104. Said acts by themselves and altogether violate Article 4 of the Puerto Rico Law of Monopolies and Section 2 of the Sherman Act, 15 USC § 2.

105. Given these anticompetitive acts referred to herein, Cellustar has suffered and continues to suffer substantial damages that include but are not limited to substantial losses in sales, loss of retailers and loss in the value of its brand and reputation in the market as master agent that are estimated in an amount no less than $7,000,000.00.

106. Cellustar has a right to demand and hereby demands triple compensation for damages suffered by virtue of the provisions of the Law of Monopolies and the Sherman Act.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. *[signature]* June 2019.

F.    **Sixth Cause of Action:  Discrimination in Prices in Violation of Article 7 of the Puerto Rico Law of Monopolies, 10 LPRA § 263 and Section 2(a) of the Robinson-Patman Law, 15 USCA § 13(a)-(f).**

107. All previous allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

108. To sell to a wholesaler a product at a higher price to the one the same vendor sales to retailers of the same product that compete in the same market where the wholesaler operates is a violation of the Law of Monopolies, federal and local.  See, Federal Trade Commission v. Morton Salt Co., 334 US 37, 55 (1948).

109. In particular, Article 7(a) of the Law of Monopolies, identical to the corresponding Section 13 of the Robinson-Patman Act, 15 USC 13, prohibits a merchant to sell its products to different buyers at a different price if that has an adverse effect in the competition or can create a monopoly in any type of commerce in Puerto Rico.  10 LPRA § 263(a).

110. The requisites of a cause of action for price discrimination are (1) discrimination in the price; (2) between two buyers of the same vendor; (3) of objects of commerce; (4) of the same grade and quality; (5) when the effect of such discrimination can substantially reduce competition or tends to create a monopoly in any kind of commerce, or affects, destroys, or avoids competition with any person that grants or receives the

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.  _____  June 2019.

benefit of said discrimination.  Pressure Vessels of Puerto Rico, 137 DPR at page 515 (1994); Texaco, Inc. v. Hasbrouck, 496 US 543, 556 (1990).

111. Cellustar and Actify compete as master agents of retailers that sell Sprint's products and services in Puerto Rico. That is to say, they are two buyers of the same vendor, Sprint, in the same market and the same objects.  However, Sprint decided to increase the cost of the products to Cellustar and its retailers by including the cost of shipment, while it did not do so with Actify and its retailers.  The purpose was to affect and avoid competition between the distributors, with the goal of eliminating one of the two competitors that at the present time provide the distribution service.

112. The discrimination in prices perpetuated by Sprint had an adverse effect in the competitive position held by Cellustar in the market, causing substantial harm because of the loss of income and decrease in sales because of its retailers' inability to sell at the same price levels offered by Actify's retailers.

113. The difference in prices charged for the same product to the retailers constitutes a violation of Article 7(a) of the Puerto Rico Antitrust Law, 10 LPRA § 263(a) and Robinson-Patman Act.

114. In light of the herein referred price discrimination, Cellustar requests that this forum declares and prohibits the

described practice carried out by Sprint because it contravenes the Puerto Rico Law of Monopolies and the Robinson-Patman Act.

115. More importantly, Article 7(c) of the Puerto Rico Law of Monopolies, similar to its equivalent in the Robinson-Patman Act, provides that:

> It will be illegal that any person supplies, forces itself to supply, or contributes to supply, any service or help to, or for the benefit of a client in connection with the processing, handling, sale or offer of sale of any object of commerce, built, sold, or offered for sale by that person **unless that said service or help is available in proportionally equal terms to all the clients competing in the distribution of said objects in Puerto Rico.**

10 LPRA §263 (c).

116. As previously said, Sprint, granted Actify to receive services, promotions and assistance that have not been available to Cellustar for the sale of Boost Mobile phones.  These include, for example: 1) the offering of Open Mobile retailers to Actify and not Cellustar; 2) the authorization to Actify's retailer to open stores, while said authorization was denied to Cellustar's retailers; 3) rent payment incentives only to Actify's retailers; 4) Sprint's permissive behavior toward fraud in Actify's stores, while going after Cellustar for alleged non-compliance with sales quotas; 5) inventory restriction to Cellustar and not Actify, particularly with phones on active promotions by Sprint; 6) celebration of promotional activities with Actify and its

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _____  June 2019.

retailers, not including Cellustar in said activities; and promotions on cellular phones available to Actify but not to Cellustar.

117. The many advantages that Sprint grants Actify over Cellustar in the sale and promotion of cellular phones constitute a violation of Article 7(c) of the Puerto Rico Law of Monopolies.

118. Moreover, Section 13(e) of the Robinson-Patman Act prohibits a seller to provide services or facilities related with the processing and handling of products, unless offered to all competitors in equal terms. 15 USC §13. This includes the provision of promotional events, which discrimination also prohibits Section 13(d). Therefore, while Sprint was engaging in said promotional opportunities with Actify, they had to offer the same promotional opportunities to the rest of the competitors, that is to say, to Cellustar in the same terms. See, FTC's Fred Meyer Guides. By not doing that, Sprint also violated Section 13(d) and (e) of the Robinson-Patman Act.

119. In view of the anticompetitive acts by Sprint, Cellustar suffered substantial losses in the market, among others, estimated in no less than $7,000.000.

120. In light of the above, Cellustar requests redress for the damages suffered because of loss of sales and the value of its brand plus triple of damages suffered and costs and attorney's

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation.  ⟶⟶⟶  June 2019.

fees, pursuant to the provisions of Article 12 of the Puerto Rico Law of Monopolies, 10 LPRA § 268.

**G.   Seventh Cause of Action: Declaratory Judgment over Nullity of Contractual Clauses contrary to Public Order; to the Puerto Rico Law of Monopolies and to Federal Law of Monopolies.**

121. All previous allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

122. By information and belief, Sprint promoted the elimination of Cellustar as master agent to severely limit its participation in the market. That arises from the fact that: 1) Sprint limits Cellustar's inventory while not with Actify; 2) Sprint decided that Actify was going to be the only master agent of all the Open Mobile stores; 3) Sprint imposed a shipping charge to Cellustar that increased the prices of the phones; and 4) Sprint tried to cancel Cellustar's distribution contract to make Actify the only master agent for Sprint.

123. Cellustar requests that this Honorable Court determine that any contractual agreement, verbal or written, or voluntary offer granted by Sprint that is directed to give Cellustar less benefits or participation in the market is declared null and illegal for it being contrary to public order and because it contravenes the provisions of the Puerto Rico Law of Monopolies, 10 LPRA §§ 258-276 and Sherman Act, 15 USC §§ 1-7.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. *[signature]* June 2019.

H.   **Eighth cause of action - Compensation in Damages, Breach of Contract, Unfair Competition and Cellustar' Impairment of Economic Business and Interests.**

124. All previous allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

125. Every person who through guilt or negligence causes harm to a third party incurs in civil liability and is responsible for the compensation of the damages caused.  Article 1802 of the Civil Code, 31 LPRA §5141.  The basic elements of every cause of action in damages under Article 1802 are: harm, wrongful or negligent act or omission and causation nexus between them.  Ojeda v. El Vocero de P.R., 137 DPR 315, 323 (1994).

126. The general doctrine on unfair competition has the goal of providing a legal remedy to all merchants affected in its economic interests because of dishonest acts, unjust or unjustifiable of another.  Posadas de Puerto Rico Assocs. Inc., v. Sands Hotel & Casino, Inc., Pratt Hotel Corp., Southmark San Juan, Inc., 131 DPR 21 (1992).

127. The unfair competition acts cover a wide array of claims in damages that include but are not limited to acts that harm monetary interests, business and relationships of the competitor and the illegal interference with the business of a competitor by means of unfair and dishonest actions.  See, Rain v. Rolls-Royce Corp., 626 F 3d, 372, 381 (7th Cir. 2010).

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ⸺⸺⸺⸺ June 2019.

128. The codefendants have incurred in unfair acts toward Cellustar described in this Complaint with the intention of harm its commercial and economic interests and with the purpose to keep its monopolistic control in the market of prepaid phones in Puerto Rico.

129. The unlawful, anticompetitive, and harmful acts of the codefendants have caused Cellustar losses and harm by the millions for impairment of business relations, loss of access and inventory for the eventual sale in Puerto Rico and impairment of Cellustar's goodwill that are estimated in an amount no less than $7,000,000.

130. In the alternative, Plaintiffs are entitled to be awarded contractual damages for the slow, fraudulent, partial, in bad faith and contrary to public order performance by Sprint of its contractual obligations with Cellustar.

131. Similarly, in the alternative, Plaintiffs are entitled to the compensation of the damages caused by the codefendants for tortuously interfering with the contractual relationship between Sprint and Cellustar, in detriment to Cellustar's interests.

132. In light of the above, Cellustar has a right to demand and herein demands compensation for the damages suffered that exceed $7,000,000.

**WHEREFORE**, Cellustar respectfully requests this Honorable Court, to grant this Complaint and issue Judgment:

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ~~~~~~~ June 2019.

(1) ordering the codefendants to pay Cellustar all damages caused by the impairment and/or violation of the distribution contract, estimated in an amount greater than $7,000,000, plus triple compensation established by the aforementioned antitrust laws;

(2) ordering Sprint to comply with the distribution contract;

(3) granting a temporary restraining order and a provisional and permanent injunction forbidding Sprint to incur in any acts directed to impair or terminate the distribution relationship with Cellustar. Said permanent injunction order should include, without limitation, the following: (i) order Sprint to cease the imposition of restrictions in Cellustar and its retailers' inventory supply and provide inventory equitably to all its retailers; (ii) order Sprint to cease including the shipment cost that was not collected from Cellustar's retailers; (iii) order Sprint to authorize the opening of new stores requested by Cellustar's retailers; (iv) order Sprint to offer and grant Cellustar and its retailers the same benefits, concessions, incentives, promotions and treatment received by Actify and its retailers; and (v) order

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _____ June 2019.

Sprint to cease every act directed to impair, rescind or terminate the distribution relationship with Cellustar;

(4) order the codefendants to pay Cellustar attorney's fees and costs of expert witness incurred in this litigation, as provided by Article 7 of Law 75;

(5) declare the nullity of every agreement or contract between the codefendants directed to impair the contract between Sprint and Cellustar and/or adversely affecting Cellustar's participation and free competition in the market;

(6) ordering the codefendants to pay Cellustar the costs incurred in this litigation, interests and a reasonable amount for attorney's fees for recklessness;

(7) any other remedy applicable by law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on May 15, 2019.

> **PIETRANTONI MÉNDEZ & ALVAREZ LLC**
> Popular Center, 19th Floor
> 208 Ponce de León Ave.
> San Juan, Puerto Rico  00918
> Telephone:  (787) 274-1212
> Fax:  (787) 274-1470
>
> s/ *Herman G. Colberg-Guerra*
> Herman G. Colberg-Guerra
> Puerto Rico Bar No. 11765
> hcolberg@pmalaw.com
> s/ *Christian A. Muñoz Lugo*
> Christian A. Muñoz Lugo
> Puerto Rico Bar No. 20316
> cmunoz@pmalaw.com

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. ~~~~~~~~~ June 2019.

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR SECTION OF SAN JUAN

| | |
|---|---|
| CELLUSTAR CORP.<br><br>    Plaintiff<br><br>      v.<br><br>SPRINT CORPORATION; SPRINT SOLUTIONS, INC.; PR WIRELESS PR, LLC; ABC COMPANY AND INSURANCE COMPANIES ABC<br><br>    Defendants | CIVIL NO. SJ2019CV04871<br><br>VIOLATION OF LAW No. 75 of JUNE 24, 1964; SPECIFIC PERFORMANCE; PRELIMINARY AND PERMANENT INJUNCTION; STATUTORY ATTORNEYS FEES; VIOLATION OF PUERTO RICO ANTITRUST LAWS; VIOLATION OF SHERMAN ACT AND OF ROBINSON-PATMAN ACT; DECLARATORY JUDGMENT; DAMAGES |

## SWORN STATEMENT

I, Adolfo Reyes Falcón, on my personal capacity and as Cellustar Corp.'s President, of legal age, married, businessman and resident of Canóvanas, Puerto Rico, solemnly under oath DECLARE:

1.    My name and personal circumstances are as expressed above.

2.    I have carefully read the captioned Complaint, and all the facts included in the same are personally known to me and, to my best judgment, are the truth of what is expressed.

3.    The Complaint was drafted pursuant to my request as President of Cellustar Corp.

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _____ June 2019.

2

IN WITNESS WHEREOF, I swear and subscribe the present in San Juan, Puerto Rico, on the 18th of May 18 of 2019.


                    s/Adolfo Reyes Falcón
                    Adolfo Reyes Falcón


Affidavit No. 3,653

     SWORN AND SUBSCRIBED before mi by Adolfo Reyes Falcón, of the personal circumstances above stated, whom I have identified through license 2121985.

     In San Juan, Puerto Rico, this 18th day of May 2019.


                    s/Jorge Enrique Valldejuly Reyes
                    Notary Public

                    [stamped date May 18, 2019]


[square receipt of Internal          [Round Attorney-Notary Public
Revenue Stamp of the Commowealth     Jorge Enrique Valldejuly Reyes
Of Puerto Rico affixed in the        ink stamp]
Document]

CERTIFICATION: The undersigned, Moises S. Hernández Amateau, a Federal Court Certified Interpreter (FCCI) and a State of Florida Certified Court Interpreter for Spanish, affirms that this document is a true and correct translation. _Moises S. K___ June 2019.