UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CELLUSTAR CORP. | CIVIL NO. 3:19-cv-01559 |
| Plaintiff | VIOLATION OF LAW 75 OF JUNE 24, 1964; SPECIFIC PERFORMANCE; PRELIMINARY AND PERMANENT INJUNCTION; STATUTORY ATTORNEYS FEES; VIOLATION OF PUERTO RICO ANTITRUST LAWS; VIOLATION OF SHERMAN ACT AND OF ROBINSON-PATMAN ACT; DECLARATORY JUDGMENT; DAMAGES |
| v. | |
| SPRINT SOLUTIONS, INC.; PR WIRELESS PR, LLC; ABC COMPANY AND INSURANCE COMPANIES ABC | |
| Defendants | |

**AMENDED COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW the plaintiff, Cellustar Corp. (hereinafter "Cellustar"), through its undersigned attorneys and, very respectfully states and prays:

## I.   THE PARTIES

1.    The plaintiff, Cellustar is a corporation organized under the laws of Puerto Rico.  Its address is: Sanchez Castaño Ave., Corner of Highway #874, Carolina, Puerto Rico 00984.  Its postal address is PMB 2306, PO Box 6092, Carolina, PR 00984-6017. Cellustar is a "distributor" under Law No. 75 of June 24, 1964, as amended, 10 LPRA §§278-278e (hereinafter, "Law 75").

2.    Co-defendant Sprint Solutions, Inc. is a corporation organized under the laws of Delaware. It is engaged in the telecommunications industry and distributes phones and equipment. It is not authorized to do business in Puerto Rico. Its address is 2001 Edmund Halley Drive, Reston, VA 20191-3438.  By information and belief, its e-

mail address is sprintlegalsales@sprint.com and its phone number is (703) 869-0570.

3.     Co-defendant PRWireless PR, LLC ("PRWireless"), is a limited liability company organized in the State of Delaware and is authorized to do business in Puerto Rico. This company operates and/or handles Sprint's cellular phone services and data, such as Boost Mobile and Open Mobile, in Puerto Rico. Its principal office is located at 251 Little Falls Drive, Wilmington, DE 19808. PR Wireless's offices in Puerto Rico are located at Chrysler Building, Metro Office Park, 1st Street, Suite 300, Guaynabo, PR 00968. Its resident agent is CT Corporation Systems and its address is: 361 San Francisco Street, San Juan, PR 00901.  Its e-mail address is juan.saca@openmobilepr.com. By information and belief, its phone number is (787) 810-5757.  Sprint Corporation is the owner of PR Wireless.

4.     Co-defendant ABC Company is an unknown entity with a fictitious name used by Sprint, its subsidiaries or affiliates to handle and/or assist in its businesses in Puerto Rico.  Upon discovery of the real name of this entity, Complaint will be amended, pursuant to Rule 15.4 of Civil Procedure, 32 LPRA Ap. V.

5.     Sprint Solutions, Inc., PRWireless and ABC Company (jointly, "Sprint") constitute a "principal" under Law 75.

6.     Insurance Companies ABC are unidentified insurance companies which could cover or be liable for the damages and/or causes of action subject of this litigation. Upon discovery of the real names of these entities, the Complaint will be promptly amended.

## II.   THE FACTS

7.   Sprint is the owner of the products and prepaid service branded "Boost Mobile." Boost Mobile provides its telephone services through Sprint's network.

8.   In the year 2010, Sprint introduced its Boost Mobile service/product brand in Puerto Rico, after acquiring Virgin Mobile, a competitor brand of prepaid products and services in the United States.

9.   In January 2011, Cellustar and Sprint Solutions, Inc. commenced a long-term or self-renewing contractual relationship.

10.  The contractual relationship between Cellustar and Sprint Solutions, Inc. began in January 2011 upon entering into a Prepaid Wireless Product Agreement (the "Agreement") in which Cellustar agreed to become a distributor or exclusive master agent of Boost Mobile brand phones and products in Puerto Rico and the U.S. Virgin Island ("the Territory").

11.  As part of its contractual obligations, Cellustar was in charge of promoting and distributing Boost Mobile prepaid phones and accessories in the Territory through independent retailers, who executed contracts with Cellustar for the retail sale of Boost Mobile prepaid phones and accessories to consumers.

12.  The principal and distributor contractual relationship between Sprint and Cellustar can be described as follows: 1) Cellustar buys Boost Mobile prepaid phones and accessories from Sprint; 2) Cellustar assumes the risk of loss of Boost Mobile prepaid phones and accessories after its purchase; 3) Cellustar keeps an inventory of these phones and products in its facilities; 4) Cellustar establishes a retail distribution network for the sale of Boost Mobile prepaid phones and

accessories; 5) Cellustar provides its retailers lines of credit for the purchase of Boost Mobile phones and accessories; 6) Cellustar sells and distributes Boost Mobile prepaid phones and accessories to its retailers; 7) Cellustar receives additional compensation from Sprint for the consumers that buy Boost Mobile phones from Cellustar's contracted retailers; and 8) Cellustar conducts promotions and marketing events for Boost Mobile phones and products independently and jointly with its retailers and Sprint.

13.   Originally, VIP Wireless and Actify LLC ("Actify") began distributing the Boost Mobile brand in Puerto Rico. Eventually, VIP Wireless withdrew from the market, leaving Actify as the only master agent in Puerto Rico. Because Actify did not reach the expected sales volume, Sprint hired Cellustar as a distributor-master agent because its President had vast experience in the telecommunications market in the Territory. With time, Cellustar developed and expanded sales of Boost Mobile prepaid mobile phones and products in the Territory.

14.   Since the beginning of its contractual relationship with Sprint, until the beginning of the year 2018, Cellustar was the largest distributor of Boost Mobile phones and products in the Territory. Actify, Cellustar's only competitor in the Territory, was second. Cellustar ended the year 2011 with 32 retailers of Boost Mobile phones and products under contract. By the year 2017, Cellustar had 84 retailers under contract selling Boost Mobile phones and products in the Territory.

15.   At the beginning of the year 2018, Cellustar was responsible for around 40,000 consumers that were using Boost Mobile prepaid phones in Puerto Rico.

16.   In spite of Cellustar's success in developing the market for Boost Mobile products and phones, Sprint started to carry out acts of impairment in the existing distributor relationship. Its intention was to strip away Cellustar's distribution of Boost Mobile products and phones to take advantage of the development of the Boost Mobile brand that Cellustar had achieved since 2011.

A.   <u>Discrimination in transportation charges</u>

17.   As described before, Cellustar buys prepaid Boost Mobile phones through Sprint. This is the only way Cellustar can buy these telephones.

18.   At the beginning of the distributorship, Sprint assumed the transportation costs of Cellustar-acquired phones for resale to its retailers in the Territory.

19.   However, in 2014, without prior notice or Cellustar's consent, Sprint started to charge transportation costs of approximately $2.00 for each Boost mobile phone bought by Cellustar, in addition of the purchase price of each phone.

20.   This new charge made the total cost of the phone higher than the price paid by consumers for Boost Mobile phones.

21.   Cellustar learned several months later that Sprint did not impose, nor was charging this transportation cost to Actify.

22.   Actify is Cellustar's competitor and a national distributor of Boost Mobile phones that also operates as a master agent for Sprint in the Territory.

23.   This unequal treatment not only caused losses to Cellustar that Actify did not have to bear, but also caused Cellustar's largest

retailer, Fivestar Enterprises ("Fivestar") to request and obtain from Sprint a change of distributor-master agent, from Cellustar to Actify. The reason Fivestar gave for this change of distributor was that Sprint was not charging Actify this transportation cost and that, therefore, Fivestar could buy phones at a lesser cost.

24.   Upon performing this change of distributor/master agent to Fivestar, Cellustar lost approximately 15% of the income gained through the sales made by its retailers.

25.   Sprint never indemnified or compensated Cellustar for this loss.

26.   Sprint gave Actify more favorable prices than to Cellustar. Therefore, Sprint violated its contractual and legal obligations with Cellustar by having an unequal and unjustified treatment in connection with phone prices in violation of Law 75, antitrust laws and other legal provisions.

B.   Inventory restriction

27.   On or around the year 2015, Sprint gradually began to limit the provision of phones to Cellustar and its retailers.

28.   On several occasions, when Cellustar placed purchase orders of prepaid phones, Sprint, without motive or explanation, would not honor the purchase orders or severely limit the availability of phones to Cellustar.

29.   This inventory restriction was more prevalent with phones in promotion and, particularly, with phones where Sprint assumed part or the total cost of the phones as part of a promotion, which are always in highest demand.

30.   The phones where Sprint assumes total or partial cost as part of a promotion are always the phones with the most sales in Puerto Rico.

31.   Meanwhile, Sprint did not constrain the availability of phones to Cellustar's only competitor in the Territory, Actify. Sprint limited Cellustar's inventory much more, particularly with phones in promotion, which were precisely the ones restricted the most by Sprint to Cellustar. Sprint never assigned inventory fairly and proportionally between Cellustar and Sprint.

32.   Actify is a subsidiary of Ingram, the entity which handles the inventory of Sprint's phones in the United States and the Territory.

33.   Sprint's preferential and/or discriminatory treatment in phone inventory caused a progressive and artificial increase in Actify and its retailers' sales and clients, and a corresponding decrease in Cellustar and its retailers' sales and clients. Boost Mobile clients progressively believed that Actify's retailers had greater inventory and better prices than Cellustar's retailers.

34.   Moreover, on some occasions, Sprint required Cellustar's retailers to assume part of the purchase price of the phones as a condition for the sale of said phones to consumers through its retailers. This requirement is also illegal.

35.   Sprint's preferential and/or discriminatory treatment in the provision of phones constitutes a violation of Cellustar's contractual and legal rights and an illegal act, which harms the free competition between Cellustar and Actify, and Cellustar's retailers, who can only purchase Boost Mobile phones from Cellustar.

36.   Sprint violated its contractual and legal obligations toward Cellustar and kept an unequal and unjustified treatment of inventory and promotions available, in violation of Law 75, antitrust laws and other legal provisions on preferential and/or discriminatory treatment by perpetuating a discriminatory supply of phones and restricting and/or eliminating the availability of phones to Cellustar. These actions continue today.

C.   Discrimination in the availability of Open Mobile stores

37.   During the year 2017, Sprint announced the purchase of PR Wireless PR LLC ("PR Wireless"), which was doing business in the Territory as Open Mobile until then. Open Mobile was a Sprint/Boost Mobile competitor engaged in the business prepaid phones in Puerto Rico.

38.   Both entities would operate under a new company where Sprint and PR Wireless would have a 68% and 32% financial share, and a 55% and 45% voting share in the common enterprise, respectively.

39.   The referenced acquisition meant that most Open Mobile retailers would keep doing business for Open Mobile on a temporary basis and would later become retailers of Sprint's distributors and/or master agents for the sale of Boost Mobile phones.

40.   Cellustar was willing to accept at least half of the retailers coming from Open Mobile, as it was the largest distributor/master agent in the Territory.

41.   However, without even informing Cellustar, Sprint assigned all former Open Mobile retailers to Actify. Sprint prevented Cellustar from becoming a distributor/master agent for 100% of the retailers coming from Open Mobile.

42.   The aforesaid represented an automatic increase of around 110 retailers to Actify. It was at that moment that Actify, for the first time, surpassed Cellustar in the number of retailers in Puerto Rico.

43.   Sprint did not notify or explain to Cellustar at any time, why it precluded Cellustar from becoming the former Open Mobile retailers' distributor/master agent and reserved said retailers exclusively for Actify.

44.   Sprint violated its contractual and legal obligations toward Cellustar and maintained an unequal and unjustified treatment between Cellustar and Actify in violation of Law 75, the antitrust laws and other legal provisions, by interfering with former Open Mobile retailers and preventing Cellustar from becoming a master agent of former Open Mobile retailers.

D.   <u>Cellustar termination as a distributor</u>

45.   Shortly after assigning all Open Mobile's retailers to Actify, Sprint unilaterally and without warning terminated its principal/distributor-master agent relationship with Cellustar effective on June 30, 2018.

46.   The reason for this termination was to transfer all the retailers from Cellustar to Actify. Sprint requested Cellustar its cooperation to perform this transition.

47.   The assignment of all former Open Mobile's stores and Cellustar's retailers to Actify had been planned and agreed to between Sprint and Actify prior to the assignment of Open Mobile's retailers to Actify. Moreover, Sprint improperly shared with Actify information about Cellustar's sales and planned out Cellustar's termination so as to assign

to Actify all Cellustar's retailers long before Cellustar's termination. All of this was done without Cellustar's knowledge.

48.   On June 11, 2018, Cellustar sent Sprint a cease and desist letter demanding Sprint to rescind its termination of Cellustar's distribution rights because the termination was without cause and in violation of Law 75 of July 24, 1964, as amended.

49.   On June 12, 2017, after receiving Cellustar's cease and desist letter, Sprint withdrew its termination and plan to transfer retailers from Cellustar to Actify.

50.   Again, Sprint violated its legal and contractual obligations with Cellustar and maintained an unequal and unjustified treatment between Cellustar and Actify upon termination of the relationship with Cellustar in violation of Law 75, antitrust laws and other legal provisions.

51.   The fact that the termination was withdrawn did not prevent Cellustar from being harmed. Sprint's discrimination in its treatment between Actify and Cellustar continued.

E.   Additional discriminatory treatment from Sprint to Cellustar

52.   Sprint provided Actify and its retailers a series of incentives, benefits and subsidies, including rent payments to certain Actify retailers, that were never available to Cellustar.

53.   For example, Sprint sponsored 49 promotional activities during the Christmas period of the year 2018. Almost none of these promotional activities involved Cellustar or its retailers. Almost all these promotional activities were performed by Sprint for Actify and its retailers. This shows a clear discriminatory treatment in which Sprint

chooses only Actify for promotional activities and denies these opportunities to Cellustar.

54.   In addition, Sprint constantly authorizes Actify retailers to open new Boost Mobile stores in several places throughout Territory, while it constantly denies the same requests to Cellustar's retailers. This again shows a clear discriminatory treatment in which Sprint allows only Actify and its retailers to expand their businesses and denies Cellustar and its retailers such opportunities.

55.   Sprint has also condoned, tolerated and/or allowed Actify retailers, which are supposed to only sell Sprint products, to sell products that are not Sprint's, despite Sprint having been notified and having knowledge of said actions.

56.   Meanwhile, Sprint has punished Cellustar retailers for allegedly having sold products that are not Sprint's and for allegedly not complying with sales quotas. Again, Sprint shows a discriminatory and preferential treatment in favor of Actify and its retailers.

57.   Sprint officials had knowledge that several Actify retailers were fraudulently activating mobile phones and processing them as "port in" to defraud Sprint, with the purpose of artificially increasing its sales to obtain additional compensation from Sprint. In spite of this, Sprint did nothing against Actify or the other retailers responsible for these fraudulent acts.

58.   Sprint also authorized many former Open Mobile stores, now Actify retailers, to violate the Cellustar's Master Agreement's radius restrictions to Cellustar and its retailers' detriment. This caused Cellustar and its retailers to lose sales and costumers.

59.   Moreover, Sprint is now compelling Cellustar's retailers to relocate the stores that were near or in the same location as former Open Mobile stores even though Cellustar's retailers were at the location first, causing additional damages to Cellustar and its retailers. Sprint has not even offered to compensate Cellustar or its retailers for this situation.

60.   Sprint has also not been paying Cellustar commissions under the terms of the Distribution Agreement. Pursuant to the terms of the Agreement, Cellustar earns a Device Commission on a scale of $4.00-$10.00, depending on the suggested retail price of the device. However, since September 1, 2017, Sprint has paid Cellustar the amount of $5.00 per device. Pursuant to our calculations, Sprint owes Cellustar $62,000 in commissions up and until March 2020, which continue to accrue.

61.   During the COVID-19 pandemic, when the Puerto Rico Telecommunications Bureau allowed each telecommunication company to open stores by region, Sprint allowed Actify to open 16 out of the 19 stores allowed in the Island. This further demonstrated the Sprint discriminatory animus and caused additional damages to Cellustar.

62.   As advised by Sprint, as of July 1, 2020, DISH Network Corporation ("Dish") assumed Sprint Solutions, Inc.'s obligations under the Agreement, as required by the U.S. Government as a condition for its approval of the Sprint Corporation and T-Mobile US, Inc.'s merger.[1] Also,

---

[1] Pursuant to Rule 25(c) of Federal Rules of Civil Procedure when "an interest is transferred, the action may be continued by or against the original party unless the Court, on motion, orders the transferee to be substituted in the action or joined with the original party.

as part of this divestiture, most of Sprint's officials working for the Boost Mobile business are now working for Dish.

63.   As soon as this change occurred, Sprint dramatically reduced Cellustar's credit limit with Sprint from $1.2 million to $700,000. Cellustar, like any other master agent, uses its credit to purchase phone inventory for its close to 50 retailers in the Territory. Cellustar asked Defendants several times for reconsideration and an explanation for this drastic reduction. Defendants never gave any reasons for this reduction and confirmed it would not reconsider.

64.   For years now and up until the year 2020, it has become evident that Sprint has taken and continues to take many different actions to eliminate Cellustar's distribution rights as a "Master Agent" in the Territory without compensation and assign Cellustar's business to its sole competitor, Actify, causing Cellustar substantial damages in the process. It has been extremely hard and burdensome for Cellustar to continue to do business with a principal who, without telling Cellustar, planned many years ago to take Cellustar out of business. It has also been extremely frustrating that Sprint continues to cause Cellustar harm by severely restricting inventory and favoring Actify at every chance, hoping that its actions destroy Cellustar's business and/or spirit.

65.   As Sprint's actions show, it is trying to create an artificial justification to terminate Cellustar as a distributor and grant Actify the distribution of all its products in the Territory.

66.  Because of the acts previously recounted, Cellustar has suffered damages estimated in over $9,000,000, including the damages for loss of income.

67.  Cellustar has tried and pleaded Sprint to cease all of the aforementioned illegal actions. Cellustar warned Sprint that its acts are contrary to Law 75 and other state and federal laws that protect free trade. However, Cellustar's warnings have fallen on deaf ears and Sprint continues with its illegal acts up until today.

### III.  CAUSES OF ACTION

**A.  First Cause of Action: Damages as a result of impairment of the contractual distributorship relationship under Law 75 and specific compliance of the distribution contract.**

68.  All allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

69.  The Puerto Rico Dealers' Act was enacted to address the abusive practices of principals who arbitrarily eliminated distributors, or impaired the established relationship, after distributors had invested in the business, successfully established a market in Puerto Rico, and created a goodwill for their principal's products or services. Article 4 of Law 75, 10 LPRA §278c.

70.  In Next Step Medical Co., Inc. v. Bromedicon, Inc. *et al.*, 190 DPR 477, 489 (2014) the Supreme Court of Puerto Rico explained that:

> Law No.75 was designed with the specific purpose of protecting the legitimate rights of the distributors and redress the harm caused to them.  This, in relation to the abusive practice of principals who, without just cause, arbitrarily harm the contractual relationship with the distributors, as soon as these create a favorable market to its products and services.

65.   Article 2 of Law 75, 10 LPRA §278a, provides that no principal or grantor can: (1) terminate a distribution contractual relationship without just cause; or (2) directly or indirectly perform any act in detriment of the relationship established; or (3) refuse to renew the contract at its maturity without just cause.

66.   Moreover, Article 2A(b) provides a presumption that a principal or grantor has impaired the existing relationship in any of the following cases:

> (1) When the principal or grantor establishes facilities in Puerto Rico for the direct distribution of merchandise or the rendering of services which were previously in the charge of the dealer;
>
> (2) when the principal or grantor establishes a distribution relationship with one or more additional dealers for the area of Puerto Rico or any part of said area in conflict with the contract existing between the parties;
>
> (3) **when the principal or grantor unjustifiably refuses or fails to fill the order for merchandise sent to him by the dealer in reasonable amounts and within a reasonable time;**
>
> (4) **when the principal or grantor unilaterally and in an unreasonable manner varies the shipping methods or the manner, conditions or terms of payment for the merchandise ordered, to the prejudice of the dealer.**

See, 10 LPRA §278a-1 (Emphasis supplied).

67.   Sprint has performed a series of acts in detriment to its principal-distributor relationship with Cellustar, beginning with the charging of transportation costs to Cellustar.

68.   Sprint's harmful acts continued by: severely restricting Cellustar and its retailer's required phone inventory; limiting Cellustar's participation in the market; prohibiting Cellustar's retailers to open new stores; planning Cellustar's termination and

assignment of its business to Actify; preventing Cellustar from becoming master agent of Open Mobile acquired stores; trying to cancel Cellustar's contract; failing to pay commissions under the terms of the Cellustar's distribution agreement; unilaterally and arbitrarily reducing credit and failing to provide Cellustar and its retailers the same incentives, subsidies and promotions as Actify, among other actions mentioned in this Complaint.

69.    These acts are clear violations of the provisions of Law 75. These constitute a termination without cause and breach of Cellustar's distribution rights.

70.    Article 2A of Law 75 creates presumption of impairment of Cellustar's rights and places the burden on Sprint to prove just cause for its actions.

71.    Sprint is arbitrarily eliminating Cellustar as its distributor and impairing its established relationship, after Cellustar invested in the business, successfully established a market in Puerto Rico, and created a goodwill for Boost Mobile's products and services.

72.    Article 3 of Law 75 provides that:

> If no just cause exists for the termination of the dealer's contract for detriment to the established relationship, or for the refusal to renew same, the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused him.

10 LPRA §278b.

73.   The amount of damages under Law 75 will be determined by: actual damages, the value of the Cellustar's investment which cannot be used for any other activity, the cost of unsold inventory, the good will of the business and profit obtained in during the last five (5) years.

74.   The damages that Sprint's illegal acts have caused cannot be quantified at this moment. These continue increasing as long as Sprint continues performing said acts.

75.   Sprint's acts not only harm the principal-distributor relationship, but also affect the image of Cellustar before its retailers and clients.

76.   At this time, the damages are estimated at no less than $9 million.

77.   Sprint is obligated to comply with its agreement with Cellustar and not to discriminate between Cellustar and Actify. Sprint must be ordered to cease its acts of impairment and allow Cellustar to distribute in equal conditions with Actify and/or other distributors.

B.   **Second Cause of Action: Provisional remedy, Injunctive Relief, and Preliminary and Permanent Injunction.**

78.   All allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

79.   Article 3-A of Law 75 provides that:

> In any litigation in which there is directly or indirectly involved the termination of a dealer's contract or any act in prejudice of the relation established between the principal or grantor and the dealer, the court may grant, during the time the litigation is pending solution, any provisional remedy

> or measure of an interdictory nature to do or to desist
> from doing, ordering any of the parties, or both, to
> continue, in all its terms, the relation established by
> the dealer's contract, and/or to abstain from performing
> any act or any omission in prejudice thereof. In any
> case in which the provisional remedy herein provided is
> requested, the court shall consider the interests of all
> parties concerned and the purposes of the public policy
> contained in this chapter.

10 LPRA §278b-1.

80.   As mentioned before, Sprint's acts are contrary to Law 75. In fact, Sprint's actions activate a presumption of impairment under Law 75.

81.   In light of the above, it is hereby requested that provisional and injunctive relief be granted during the duration of this litigation, as provided by Article 3-A of Law 75.   In particular, it is hereby requested that a preliminary injunction and, eventually, a permanent injunction, be ordered forbidding Sprint to incur into any behavior directed to impair or terminate the distribution relationship with Cellustar.

82.   An order is hereby requested to include, without limitation, the following: (i) order Sprint to cease to impose restrictions to Cellustar and its retailers in the supply of inventory and provide inventory in proportionally equal terms to all the retailers; (ii) order Sprint to authorize the opening of stores requested by Cellustar's retailers; (iii) order Sprint to offer and grant Cellustar and its retailers the same benefits, concessions, incentives, credit, promotions and treatment that Actify and its retailers receive;(iv) order Sprint

to re-establish Cellustar's credit line to $1.2 million, and (v) order Sprint to cease any acts directed to impair, rescind or terminate its distributorship agreement with Cellustar.

**C.    Third cause of Action: Statutory Attorney's Fees under Law No. 75**

83.    All allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

84.    Article 7 of Law 75 provides that, in any action brought under this statute, the Court may allow attorney's fees to the prevailing party, as well as reasonable reimbursement of expert witness fees. 10 LPRA §278e.

85.    At this time, we cannot estimate the costs and attorney fees to that have and will be incurred as a result of Sprint's actions, but Cellustar hereby requests reimbursement of all attorney and expert witness' fees allowed by Law 75.

86.    Said request in addition to the right that Cellustar has to request costs and attorney's fees under its agreement with Sprint and any other legal/statutory provisions, which is also requested herein.

**D.    Fourth Cause of Action: Violation of Article 2 of Puerto Rico Monopolies Act, 10 LPRA §258 and Section 1 of the Sherman Act, 15 USC §1**

87.    All allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

88.    Section 1 of Sherman Act provides that:

> ***Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.*** *Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed*

> *guilty of a felony, and, on conviction thereof, shall*
> *be punished by fine not exceeding $100,000,000 if a*
> *corporation, or, if any other person, $1,000,000, or by*
> *imprisonment not exceeding 10 years, or by both said*
> *punishments, in the discretion of the court.*

15 USC §1. (Emphasis supplied).

89.   Similarly, Article 2 of Law No. 77 of June 25, 1964, Antitrust Laws of Puerto Rico ("Puerto Rico Law of Monopolies") establishes that:

> Every contract, combination in trust form or any other
> form, or conspiracy to irrationally restrict business
> or commerce in the Commonwealth of Puerto Rico or in any
> part of this, is hereby declared illegal and every person
> doing these contracts or compromises in said
> combinations or conspiracies will incur in a
> misdemeanor.

10 LPRA §258.

90.   Therefore, an infraction to Article 2 of the Puerto Rico Monopolies Act is configured when there is (1) a contract, combination or conspiracy; (2) to unreasonably restrict trade or commerce; (3) in Puerto Rico or any area of the same.  General Gases & Supplies Corp. v. Shoring Sys., 153 DPR 861, 870 (2001).

91.   Any agreement which allows a business with monopolistic power to control a competitor's production or means of production is illegal and unreasonable *per se* under the Puerto Rico Monopolies Act because it lacks competitive value or quality. See, General Gases & Supplies Corp., 153 DPR pages 870-71; Continental T.V., Inc. v. GTE Sylvania Inc., 433 US 36, 50 n. 16 (1977); United States Department of Justice, Federal Trade Commission, Antitrust Guidelines for Collaborations Among Competitors (April 2000).

92.   Moreover, an agreement allowing a business with monopolistic power to control its competitors' production through restrictive clauses

that limit the production capacity and sales of a competitor's product, is unreasonable and openly monopolistic under the Puerto Rico Monopolies Act because it directly affects competition in the market by reducing production and limiting the availability of the product in the market. See, Pressure Vessels of Puerto Rico v. Empire Gas de Puerto Rico, 137 DPR 497, 511 (1994); Continental T.V., Inc., 433 US, at page 49.

93. As previously stated, Sprint has conspired, together with its subsidiaries and/or Actify, to unreasonably restrict the distribution of Boost Mobile phones in the Territory and, in particular, to attempt to eliminate Cellustar as a Sprint's distributor. The anticompetitive acts hereby described include, without limitation: (1) restriction of inventory which prevents Cellustar and its retailers to pursue their business and compete fairly; (2) limitation of Cellustar's participation in the market by refusing to authorize Cellustar to be the master agent of any former Open Mobile retailers; (3) not authorizing Cellustar's retailers to open new stores and requesting Cellustar's retailers to relocate their stores; (4) increase product costs by adding shipping costs or eliminating credit terms to Cellustar without adding these costs or eliminating such terms to its competitor Actify; (5) attempt to cancel or rescind the distribution agreement between Sprint and Cellustar; (6) perform promotional activities almost exclusively with Actify; (7) planning with Actify/Ingram the termination and assignment of Cellustar's business and (8) agreeing on subsidies, benefits, promotion incentives, distribution of stores, including former Open Mobile stores with Actify, to eliminate Cellustar or place is at a competitive disadvantage.

94.   All of the above impacted Cellustar's ability to compete justly and in equitable terms in violation of Article 2 of the Puerto Rico Law of Monopolies, *supra*, and Section 1 of Sherman Act, supra.

95.   Moreover, an agreement that limits the production of a competitor is equal to an agreement to fix rates and thus, it is illegal *per se*.   See, Stop & Shop Supermarket Co. Blue Cross & Blue Shield of R.I., 373 F 3d 57 (1st Cir 2004) ("The most important *per se* categories are naked horizontal price-fixing, market allocation, and output restrictions").   See, also, U.S. v. Andreas, 216 F 3d 645, 667 (7th Cir 2000) ("Functionally, an agreement to restrict output works in most cases to raise prices above a competitive level").

96.   The inventory and credit limits imposed by Sprint on Cellustar and its retailers had the effect of unreasonably restricting the market without any competitive benefit or reasonable business justification. This, together with the increase in prices -- shipment charge to Cellustar-- and the rest of the discriminatory acts herein described gave Sprint the power to eliminate competition between Cellustar and Actify in the market for Boost prepaid phones in the Territory.

97.   In light of the above, Cellustar requests that this Honorable Court declare illegal every agreement perpetrated by Sprint that is directed to limit competition between Sprint's distributors in the Territory, under Puerto Rico and Federal antitrust laws.

98.   Because of the anticompetitive and illegal acts, Cellustar has suffered and continues to suffer damages that include but are not limited to lost sales, lost retailers, and loss of good-will as a Boost

Mobile master agent. These damages are estimated at no less than $9,000,000.00.

99. Cellustar has a right to demand, and hereby demands triple compensation for damages pursuant to the provisions of Article 12 of the Puerto Rico Law of Monopolies, 10 LPRA §268 and the Sherman Act.

E.    **Fifth Cause of Action: Violations to Article 4 of the Puerto Rico Monopolies Act, 10 LPRA § 260 and of Section 2 of the Sherman Act, 15 USC §2.**

100. All allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

101. Article 4 of the Puerto Rico Law of Monopolies, which is equivalent to Section 2 of the Sherman Act, states "[a]ny person that monopolizes or attempts to monopolize or that combines or conspires with any other person or persons with the intent to monopolize any part of business or commerce in the Commonwealth of Puerto Rico, or in any sector of such, will be considered guilty to a lesser crime." 10 LPRA § 260.

102. Therefore, a cause of action is configured when a person or entity monopolizes or attempts to monopolize the market through predatory, exclusionary, coercive, anticompetitive or discriminatory conduct devoid of any business justification other than an attempt to monopolize the market.

103. The above described conduct is illegal *per se*, because it constitutes illegal attempts to monopolize and/or perpetuate its monopoly in the distribution and sale of prepaid Boost mobile phones in the Territory. All this with the purpose of eliminating a competitor, Cellustar.

104. Said acts violate Article 4 of the Puerto Rico Monopolies Act and Section 2 of the Sherman Act, 15 USC § 2.

105. Given these anticompetitive acts referred to herein, Cellustar has suffered and continues to suffer substantial damages that include but are not limited to lost sales, lost retailers, and loss of good-will as a Boost Mobile master agent. These damages are estimated at no less than $9,000,000.00.

106. Cellustar has a right to demand and hereby demands triple compensation for the damages suffered under the provisions of the Puerto Rico Monopolies Act and the Sherman Act.

F.    **Sixth Cause of Action: Discrimination in Prices in Violation of Article 7 of the Puerto Rico Monopolies Act, 10 LPRA § 263 and Section 2(a) of the Robinson-Patman Law, 15 USCA § 13(a)-(f).**

107. All allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

108. To sell to products to a wholesaler at a price higher than the price sold to other competing wholesalers in the same market is a violation of federal and local antitrust statutes.  See, Federal Trade Commission v. Morton Salt Co., 334 US 37, 55 (1948).

109. In particular, Article 7(a) of Puerto Rico Monopolies Act, identical to the corresponding Section 13 of the Robinson-Patman Act, 15 USC 13, prohibits a merchant to sell products to different buyers at different prices if it has an adverse effect in competition or could create a monopoly in the market. 10 LPRA § 263(a).

110. The requirements to establish a cause of action for price discrimination are (1) discrimination in the price; (2) between two buyers of the same vendor; (3) of objects of commerce; (4) of the same

grade and quality; (5) when the effect of such discrimination can substantially reduce competition or tends to create a monopoly in any kind of commerce, or affects, destroys, or avoids competition with any person that grants or receives the benefit of said discrimination. Pressure Vessels of Puerto Rico, 137 DPR at page 515 (1994); Texaco, Inc. v. Hasbrouck, 496 US 543, 556 (1990).

111. Cellustar and Actify compete as master agents of retailers that sell Sprint's products and services in the Territory. They are buyers of the same vendor, Sprint, in the same market. However, Sprint decided to increase the cost of the products to Cellustar and its retailers by including shipment costs, while it did not do so with Actify and its retailers. The purpose was to affect and avoid competition between the distributors, with the goal of eliminating one of the two competitors that at the present time provide the distribution service.

112. The discrimination in prices perpetuated by Sprint had an adverse effect in the competitive position held by Cellustar in the market, causing substantial damages due to loss of income and decrease in sales as a result of its retailers' inability to sell at the same price levels offered to Actify's retailers.

113. The difference in prices charged for the same product constitutes a violation of Article 7(a) of the Puerto Rico Antitrust Law, 10 LPRA § 263(a) and Robinson-Patman Act.

114. More importantly, Article 7(c) of the Puerto Rico Monopolies Act, similar to its equivalent in the Robinson-Patman Act, provides that:

> It will be illegal that any person supplies, forces
> itself to supply, or contributes to supply, any service
> or help to, or for the benefit of a client in connection

with the processing, handling, sale or offer of sale of any object of commerce, built, sold, or offered for sale by that person **unless that said service or help is available in proportionally equal terms to all the clients competing in the distribution of said objects in Puerto Rico.**

10 LLPRA §263 (c).

115. As previously said, Sprint, granted Actify services, promotions and assistance were not available to Cellustar for the sale of Boost Mobile phones. These include, for example: 1) the offering of former Open Mobile retailers to Actify and not Cellustar; 2) the authorization to open new stores to Actify's retailers, while said authorization was denied to Cellustar's retailers; 3) rent payment incentives only to Actify's retailers; 4) Sprint's permissive behavior toward fraud in Actify's stores, while going after Cellustar for alleged non-compliance with sales quotas; 5) inventory restriction to Cellustar and not Actify in the same proportion, particularly with phones on active promotion; 6) promotional activities with Actify and its retailers, not including Cellustar in said activities; 7) denial to open proportionally the same doors during the COVID-19 pandemic between Cellustar and Actify, 8) unilateral and arbitrary alteration of Cellustar's credit terms and 9) requests to relocate Cellustar's stores when these stores had been in a location prior to Actify's retailer to whom Sprint allowed to violate the master agreement's radius restrictions.

116. The many advantages that Sprint grants Actify over Cellustar in the sale and promotion of cellular phones constitute a violation of Article 7(c) of the Puerto Rico Law of Monopolies and the Robinson-Patman Act.

117. Moreover, Section 13(e) of the Robinson-Patman Act prohibits a seller to provide services or facilities related with the processing and handling of products, unless offered to all competitors in equal terms. 15 USC §13. This includes the provision of promotional events, over which discrimination is also prohibited under Section 13(d). Therefore, while Sprint was engaging in promotional events with Actify, it had to offer the same promotional opportunities to the rest of the competitors, that is, to Cellustar. See, FTC's Fred Meyer Guides. By not doing this, Sprint also violated Section 13(d) and (e) of the Robinson-Patman Act.

118. In view of the anticompetitive acts by Sprint, Cellustar suffered substantial losses in the market, among others, estimated in no less than $9,000.000.

119. In light of the above, Cellustar requests this Court to award Cellustar triple damages and costs and attorney's fees, pursuant to the provisions of Article 12 of the Puerto Rico Monopolies Act, 10 LPRA § 268 and Section 2(a) of the Robinson-Patman Law, 15 USCA § 13(a)-(f).

G.   **Seventh Cause of Action: Declaratory Judgment over Nullity of Contractual Clauses contrary to Public Order; to the Puerto Rico Monopolies Act and to Federal Antitrust Law.**

120. All allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

121. Sprint planned the elimination of Cellustar as its master agent.

122. Cellustar requests that this Honorable Court determine that any contractual agreement, verbal or written, or voluntary offer granted by Sprint directed to give Cellustar less benefits or participation in

the market is declared null and illegal for it being contrary to public order and because it contravenes the provisions of the Puerto Rico Monopolies Act, 10 LPRA §§ 258-276 and Sherman Act, 15 USC §§ 1-7.

H.   **Eighth cause of action - Compensation in Damages, Breach of Contract, Bad faith Exercise of Contractual Rights, Unfair Competition and Cellustar' Impairment of Economic Business and Interests**

123. All allegations contained in the Complaint are incorporated by reference and are made part of this cause of action.

124. Every person who through *dolo* or negligence causes harm to a third party incurs in civil liability and is responsible for the compensation of damages. Article 1802 of the Civil Code, 31 LPRA §5141. The basic elements of every cause of action in damages under Article 1802 are: harm, wrongful or negligent act or omission and causation nexus between them. Ojeda v. El Vocero de P.R., 137 DPR 315, 323 (1994).

125. The general doctrine on unfair competition has the goal of providing a legal remedy to all merchants affected in its economic interests because of dishonest acts, unjust or unjustifiable of another. Posadas de Puerto Rico Assocs. Inc., v. Sands Hotel & Casino, Inc., Pratt Hotel Corp., Southmark San Juan, Inc., 131 DPR 21 (1992).

126. The unfair competition acts cover a wide array of claims in damages that include but are not limited to acts that harm monetary interests, business and relationships of the competitor and the illegal interference with the business of a competitor by means of unfair and dishonest actions. See, Rain v. Rolls-Royce Corp., 626 F 3d, 372, 381 (7th Cir. 2010).

127. Codefendants have incurred in unfair acts toward Cellustar as described in this Complaint with the intent to harm its commercial and economic interests and take over Cellustar's business.

128. The unlawful, anticompetitive, and harmful acts of the codefendants have caused Cellustar significant losses which are estimated in an amount no less than $9,000,000.

129. In the alternative, Plaintiffs are entitled to be awarded contractual damages for the slow, fraudulent, partial, in bad faith and contrary to public order performance by Sprint of its contractual obligations with Cellustar.

130. Similarly, in the alternative, Plaintiffs are entitled to compensation of the damages caused by the codefendants for tortuously interfering with the contractual relationship between Sprint and Cellustar, or Cellustar and its retailers in detriment to Cellustar's interests.

131. In light of the above, Cellustar has a right to demand and herein demands compensation for the damages suffered that exceed $9,000,000.

WHEREFORE, Cellustar respectfully requests this Honorable Court, to grant this Complaint and issue Judgment:

    (1)   ordering the codefendants to pay Cellustar all damages caused by the impairment and/or violation of the distribution contract, estimated in an amount greater than $9,000,000, plus triple compensation established by the aforementioned antitrust laws;

    (2)   ordering Sprint to comply with the distribution contract;

(3)   granting a temporary restraining order and a provisional and
      permanent injunction forbidding Sprint to incur in any acts
      directed to impair or terminate the distribution relationship
      with Cellustar. Said permanent injunction order should
      include, without limitation, the following:

   (i)    order Sprint to cease the imposition of restrictions
          in Cellustar and its retailers' inventory supply and
          provide inventory equitably to all its retailers;

   (ii)   order Sprint to re-establish Cellustar's credit line
          to $1.2 million;

   (iii)  order Sprint to authorize the opening of new stores
          requested by Cellustar's retailers;

   (iv)   order Sprint to offer and grant Cellustar and its
          retailers the same benefits, concessions, incentives,
          promotions and treatment received by Actify and its
          retailers; and

   (v)    order Sprint to cease every act directed to impair,
          rescind or terminate the distribution relationship
          with Cellustar;

(4)   order defendants to pay Cellustar attorney's fees and costs
      of expert witness incurred in this litigation, as provided by
      Article 7 of Law 75 and/or any other applicable antitrust,
      contractual or procedural statute;

(5)   declare the nullity of every agreement or contract between
      the codefendants directed to impair the contract between

Sprint and Cellustar and/or adversely affect Cellustar's participation and free competition in the market;

(6)   ordering the codefendants to pay Cellustar the costs incurred in this litigation, interests and a reasonable amount for attorney's fees under any applicable statute;

(7)   any other remedy applicable by law.

**RESPECTFULLY SUBMITTED.**

It is hereby certified that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, on July 14, 2020

> **PIETRANTONI MENDEZ & ALVAREZ LLC**
> Popular Center, 19th Floor
> 208 Ponce de Leon Ave.
> San Juan, Puerto Rico 00918
> Telephone No.: (787) 274-1212
> Facsimile No.: (787) 274-1470
>
> *s/ Herman G. Colberg-Guerra*
> Herman G. Colberg-Guerra
> Puerto Rico Bar No. 11765
> hcolberg@pmalaw.com
>
> *s/ Christian A. Muñoz Lugo*
> Christian A. Muñoz Lugo
> Puerto Rico Bar No. 20316
> cmunoz@pmalaw.com

**UNSWORN STATEMENT**

I, Adolfo Reyes Falcón, Cellustar Corp.'s President, of legal age, married, and resident of Canóvanas, Puerto Rico, solemnly declares follows pursuant to 28 U.S.C. § 1746:

1.   My name and personal circumstances are as mentioned above.

2.   I have carefully read the captioned Amended Complaint, and, to my best knowledge, it contains the truth of what it expresses.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 14, 2020.


_____
Adolfo Reyes Falcón