IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Cellustar Corp., <br><br> Plaintiff, <br><br> v. <br><br> Sprint Solutions, Inc.; PR Wireless PR, LLC; et al, <br><br> Defendants. | **Civil No. 19-01559 (GMM)** |

**MEMORANDUM AND ORDER**

Pending before the Court is non-party Juan Saca's ("Saca") *Motion to Quash Subpoena to Testify at a Deposition in a Civil Action and For Protective Order Pursuant to Rule 26(c)* ("Motion to Quash"). (Docket No. 229). Saca centers his Motion to Quash on the apex deposition doctrine given that he was a high-level executive for Co-defendant PR Wireless PR, LLC ("PR Wireless") when the events that gave rise to Plaintiff Cellustar Corp.'s ("Plaintiff" or "Cellustar") purported claims occurred. For the following reasons, Saca's Motion to Quash is **GRANTED**.

**I. BACKGROUND RELEVANT TO THE MOTION TO QUASH[1]**

On May 15, 2019, Cellustar filed this case's original complaint ("Complaint") in the Puerto Rico Court of First Instance, Superior Section of San Juan ("State Court") in the case entitled <u>Cellustar Corp. vs. Sprint Corporation, Sprint Solutions, Inc., PR</u>

---

[1] The facts herein are taken as true for the purposes of this motion and were taken from Cellustar's Complaint. (Docket No. 1-2).

Wireless PR, LLC, Company ABC, Insurance Company ABC, Civil No. SJ2019CV04871. (Docket Nos. 1 at 2 ¶ 1; 1-2). Then, on June 7, 2019, Co-defendants Sprint Corporation,[2] Sprint Solutions, Inc. (together, "Sprint"), and PR Wireless removed the case to federal court. (Docket No. 1).

The Complaint seeks damages for violations of the Puerto Rico Dealer's Act, P.R. Laws Ann. tit. 10 §§ 278 et seq., the Puerto Rico Antitrust Act, P.R. Laws Ann. tit. 10 §§ 258, 260, 263, the Sherman Act, 15 U.S.C. § 1, and the Robinson-Patman Act, 15 U.S.C. § 13. The Complaint also seeks injunctive and declaratory relief.

In a nutshell, Cellustar, a distributor of Sprint's Boost Mobile prepaid phones and accessories, claims that Sprint engaged in a pattern of discrimination that harmed Cellustar's business. (Docket Nos. 1-2 at 6-14). According to Cellustar, Sprint gave another Boost Mobile distributor, Actify LLC, advantages and involved it in strategic planning for the Boost Mobile business in Puerto Rico while excluding Cellustar from such activities. (Id.; Docket No. 233 at 3).

In 2017, Sprint announced its purchase of PR Wireless, which was doing business in Puerto Rico and Virgin Islands under the Open Mobile brand and was also in the business of prepaid phones

---

[2] On July 17, 2019, Cellustar moved to voluntarily dismiss all claims against Sprint Corporation without prejudice. (Docket No. 29). On that same date, the Court granted Cellustar's voluntary dismissal of the action against Sprint Corporation. (Docket No. 30).

and accessories. (Docket No. 1-2 at 10 ¶ 38). Sprint's acquisition provided that Open Mobile retailers would become Boost Mobile retailers. (Id. at 10 ¶¶ 41). According to Cellustar, Sprint and PR Wireless prevented Cellustar from becoming the distributor for the retailers coming from Open Mobile. (Id. at 10-11 ¶ 42). Instead, the retailers were given to Actify LLC. (Id. at 11 ¶ 43).

On August 30, 2023, Cellustar served a subpoena on Saca, PR Wireless' former Chief Executive Officer ("CEO") and President, so that he could be deposed on September 19, 2023. (Docket No. 229 at 2). According to Saca, the "subpoena does not identify any matters or topics to be covered during [Saca's] deposition but, presumably, he will be asked about his knowledge of the facts alleged in the complaint because he was the President and CEO" of PR Wireless. (Id.). Saca sustains that he "was not directly involved in the day-to-day operations of the company" and that although he was informed at a "high level" of PR Wireless' "plan to integrate the stores that previously sold Open Mobile and rebrand them to Boost, he relied on his managerial team to execute the plan and handle all the details of the transition." (Id.) (emphasis supplied).

Saca argues that Mr. Juan Rosario ("Rosario"), former Director of Prepaid Sales for PR Wireless, "is the person most knowledgeable about the plan to transition from Open Mobile to Boost." (Id.). Saca also identified Mr. Stephan Teermat

("Teermat"), Vice President of Finance of PR Wireless, as someone with specific knowledge of the plan to transition Open Mobile stores to Boost. (Id.). Saca posits that his deposition should be quashed altogether because there are other individuals with direct knowledge of the facts relevant to Cellustar's claims. (Id. at 5).

Saca also argues that his deposition would require him to take time off from his current role as President and Executive Director of LUMA Energy since he would need time to prepare for and testify at a deposition. (Docket No. 229 at 5). Saca, thus, argues that preparing for and testifying at a deposition would cause him undue burden and hardship. (Id.; Docket No. 229-1 at 2 ¶ 8). Accordingly, Saca requests a protective order barring Plaintiff from taking his deposition.

Cellustar rejects Saca's contentions and argues that no extraordinary circumstances exist to quash Saca's deposition. (Docket No. 233 at 5). Cellustar notes that its interest is not necessarily the day-to-day operations of PR Wireless or the day-to-day particulars of Sprint and PR Wireless' plan to integrate the stores that previously sold Open Mobile and rebrand them to Boost Mobile. Rather, Cellustar is interested in the high-level information that Saca, as the alleged intellectual of said plan, possesses. (Id. at 5, 8-9, 11). Cellustar also argues that Saca's

status as the Executive Director of LUMA Energy is not a proper basis for quashing his deposition. (Id. at 12).

## II. APPLICABLE LAW

A.   Fed. R. Civ. P. 26(c)(1)

Fed. R. Civ. P. 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . .[and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . ." Fed. R. Civ. P. 26(c)(1). A movant has the burden of demonstrating that good cause exists for the issuance of the protective order. *See* Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988). To meet this burden, the movant must provide the Court with "a particular and specific demonstration of fact" and not merely "stereotyped and conclusory statements." Equal Employment Opportunity Commission v. BDO USA, L.L.P., 876 F.3d 690, 698 (5th Cir. 2017) (*quoting* In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998)); *see also* González Berrios v. Mennonite General Hospital, Inc., Civil No. 18-1146 (RAM), 2019 WL 4785701 at *2 (D.P.R. Sept. 30, 2019). Moreover, "[a] claimed lack of knowledge on behalf of the deponent does not alone provide sufficient grounds for a protective order." WebSideStory, Inc. v. NetRatings, Inc., Civil No. 06-408 WQH(AJB),

2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007); see also Digital Equipment Corp. v. System Industries, Inc., 108 F.R.D. 742, 744 (D. Mass. 1986); Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 122 (D. Conn. 1974); Travelers Rental Co. Inc. v. Ford Motor Co., 116 F.R.D. 140, 143 (D. Mass. 1987).

A district court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required." Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)); see also Equal Employment Opportunity Commission v. Triple-S Vida, Inc., Civil No. 21-1463 (MDM), 2023 WL 3093499, at *1 (D.P.R. Apr. 26, 2023).

B.  The Apex Deposition Doctrine

Under the "apex doctrine"

> courts sometimes grant protective orders barring the depositions of high-level corporate officers or managers who are unlikely to have personal knowledge of the facts sought by the deposing party. If a deponent is a high-level corporate officer who certifies that he or she has no personal knowledge of the facts, the court may grant a protective order requiring the deposing party to first seek discovery through less intrusive methods, e.g., from lower level employees who are more likely to have direct knowledge.

6 Moore's Federal Practice, § 26.105[2][a] (emphasis supplied); see also González Berrios, 2019 WL 4785701 at *2. Thus, the apex deposition doctrine aims to "prevent the deposition of a high-level executive 'that is sought simply because [that person is]

the CEO or agency head — the top official, not because of any special knowledge of, or involvement in, the matter in dispute." González Berrios, 2019 WL 4785701 at *3 (*quoting* Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118, 126 (D. Md. 2009)). To that extent, apex deposition doctrine was created to prevent the potential abuse or harassment that a deposition notice directed at an official at the highest level of corporate governance may entail. *See* Celerity, Inc. v. Ultra Clean Holding, Inc., 2007 WL 205067 at 3 (N.D. Cal. 2007); *see also* Chevron Corp. v. Donziger, 2013 WL 1896932, at *1 (S.D.N.Y. 2013) ("Because of the possibility of business disruption and the potential for harassment, courts give special scrutiny to requests to depose high-ranking corporate and governmental officials.").

Many federal courts throughout the nation, including the District of Puerto Rico, have applied the apex deposition doctrine to evaluate the propriety of deposing high-level corporate officials. *See e.g.*, In re Application of Oasis Focus Fund LP, No. 1:23-CV-00239-DII, 2023 WL 6278882, at *8 (W.D. Tex. Sept. 26, 2023), report and recommendation adopted sub nom. In re Oasis Focus Fund LP, No. 1:23-CV-239-DII, 2023 WL 7238594 (W.D. Tex. Nov. 2, 2023) ("A district court may act to delay or prevent the taking of an apex deposition where the court finds that the executive lacks information that is relevant to the opposing party's claims or

defenses or that the opposing party can obtain the information it seeks through less-intrusive means."; González Berrios, 2019 WL 4785701 at *3; B. Fernandez & Hnos. V. Intern. Broth. of Teamsters, 285 F.R.D. 185 (D.P.R. 2012) ("If, however, "[a] deponent is a high-level corporate officer who certifies that he has no personal knowledge of the facts, the court may grant a protective order requiring the deposing party to first seek discovery through less intrusive methods, e.g., from lower level employees who are more likely to have direct knowledge."); Roman v. Cumberland Ins. Group, 2007 WL 4893479, at *1 (E.D. Pa. 2007) ("Courts throughout the country have prohibited the deposing of corporate executives who have no direct knowledge of a plaintiff's claim when other employees with superior knowledge are available to testify."); Robinson v. Nexion Health At Terrell, Inc., 312 F.R.D. 438, 443 (N.D. Tex. 2014) ("Federal courts permit the depositions of such "apex executives" when conduct and knowledge at the highest levels of the corporation are relevant to the case."); Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (finding that it "may be appropriate" to preclude redundant deposition of high rank officials where other officials of a party will also be questioned). Furthermore, this Court has not identified any precedent from the United States Supreme Court or the First Circuit forbidding the application of the apex

deposition doctrine. On the contrary, the First Circuit has already recognized the apex deposition doctrine in the government context, which similarly requires that prior to deposing high ranking government officials, it be shown that they possess first-hand, relevant knowledge that cannot be obtained from other persons. *See* Bogan v. City of Boston, 489 F.3d 417 (1st Cir. 2007) ("Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated. However, even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information.") (internal citations omitted).

Nonetheless, the apex deposition doctrine does not automatically prohibit the deposition of an apex if their knowledge is relevant in a case. *See* Apple Inc. v. Samsung Electronics Co., LTD, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (*quoting* WebSideStory, Inc., 2007 WL 1120567, at *2) ("[W]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.").

In determining whether to allow an apex deposition, courts usually consider: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." Apple Inc., 282 F.R.D. at 263

(*quoting* In re Google Litig., C 08-03172 RMW (PSG), 2011 WL 4985279, at *2 (N.D.Cal. Oct. 19, 2011)).

### III. ANALYSIS

A.  Apex Deposition Doctrine and Good Cause for Protective Order

Pursuant to Federal Rule of Civil Procedure 26(c), a district court may grant a protective order from discovery for "'good cause shown.'" Bogan v. City of Boston, 489 F.3d at 423. The First Circuit has stated repeatedly that the district court has broad discretion over discovery matters and that an appellate court will "intervene in [those] matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Id. (internal citation and quotation marks omitted); *see also* Rivera-Freytes v. Puerto Rico, 286 F.R.D. 201, 203-04 (D.P.R. 2012). In the context of the deposition of a high-ranking government official, the First Circuit in Bogan held that, absent extraordinary circumstances, the use of high-ranking government officials as witnesses should be limited. *See* Bogan, 489 F.3d at 423. The First Circuit reasoned that those officials have "'greater duties and time constraints than other witnesses'" and, therefore, should not spend an excessive amount of time dealing with litigation matters. Id. The same reasoning has been applied to cases involving high ranking corporate officials.

Here, Saca opposes the taking of his deposition on the grounds that he is an "apex deponent" and that he does not possess "unique personal knowledge" of the information sought. As a threshold matter, the Court concludes that Saca has adequately established that he qualifies as an "apex deponent" entitled to the protections of the apex deposition doctrine. Saca was the President and CEO of PR Wireless from 2017 to 2019 and is currently the President and Executive Director of LUMA Energy.[3]

1.  Unique first-hand, non-repetitive knowledge of the facts at issue in the case

Because the apex doctrine applies to Saca, to take his deposition, Plaintiff must establish that he possesses unique, first-hand, non-repetitive knowledge of facts at issue in this action and that the information he possesses is not available from other sources.

In support of taking Saca's deposition, Cellustar points to: (1) several e-mail chains in which Saca is present; and (2) the deposition of PR Wireless Chief Commercial Officer, Patricia Eaves's ("Ms. Eaves"). Cellustar argues that these emails demonstrate Saca's day-to-day involvement in the PR Wireless/Open Mobile transition. Furthermore, from Cellustar's perspective,

---

[3] See Thomas v. Cate, 715 F. Supp. 2d 1012, 1049-1050 (E.D. Cal. 2010) (finding that "[t]he general rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials.") (citing United States v. Sensient Colors, Inc., 649 F. Supp. 2d 309, 316-17 (D.N.J. 2009)).

Ms. Eaves' testimony confirms Saca's involvement as she declared that Saca and Teermat "were the intellectual masterminds behind such integration plan".

Conversely, Saca certifies under penalty of perjury that he "lack[s] personal knowledge of the specific details regarding the plan to transition from Open Mobile to Boost or the particular retailers that were assigned to each distributor, including Cellustar." (Docket No. 229-1 ¶ 5). He further explains that though he was the President and CEO of PR Wireless, he was not directly involved in the day-to-day operations of the company. In his declaration under penalty of perjury, Saca expressly denied having personal knowledge relevant to this case, stating that:

> [a]lthough he was informed, at a high level, of the company's plan to integrate the stores that previously sold Open Mobile and rebrand them to Boost, [he] relied on [his] managerial team to execute the plan and handle all the details of the transition, including negotiating and entering into agreements with existing distributors and retailers.

Saca also affirms that he lacks personal knowledge "of the specific details regarding the plan to transition from Open Mobile to Boost or the particular retailers that were assigned to each distributor, including Cellustar."

Plaintiffs failed to meet their burden of demonstrating that Saca possesses unique, non-repetitive, firsthand knowledge about the facts underlying this action necessitating his apex

deposition. The mere fact that Saca as the CEO of his company was kept apprised —at a high level, as he himself admits, either by a direct supervisor tasked with managing or by the Vice President of Finance— of the matters Plaintiff seeks is not enough. While Saca may have some relevant knowledge in the broadest sense of the word, since it seems he was advised and informed as CEO, the record reflects that knowledge is not unique to him. *See* Dawkins v. Barnhart Crane & Rigging Co., No. 8:18CV534, 2020 WL 1535851, at *2 (D. Neb. Mar. 31, 2020) (*quoting* Drake v. Steak N Shake Operations, Inc., No. 4:14-CV-01535-JAR, 2018 WL 3625769, at *2 (E.D. Mo. July 30, 2018)(granting protective order to prevent deposition of CEO where plaintiff failed to demonstrate the CEO had "unique or specialized knowledge of the facts at issue in this case" and because "less burdensome avenues exist to obtain the information".)).

    2.   Exhaustion of other less intrusive discovery methods

The second step in the Court's analysis is to determine whether Cellustar exhausted other less intrusive discovery methods. Particularly, Saca argues that witnesses in this case, including Ms. Eaves, have testified that Rosario is "the person most knowledgeable about the plan to transition from Open Mobile to Boost" and that Rosario "was the person who conveyed the written offer to Cellustar and met in person with Cellustar representatives

to present this plan." (Docket No. 229 at 2). Ms. Eaves also identified Teermat as someone who has knowledge about the plan to transition Open Mobile stores to Boost. (Id.). Based on this, Saca suggests that the knowledge Cellustar seeks from him is not unique nor "unavailable from other sources." (Id. at 2, 5). Indeed, both Rosario and Teermat may be knowledgeable as to the particulars of the plan to transition and integrate Open Mobile retailers into Boost Mobile retailers. The record does not show that their depositions have been sought.

As such, Plaintiff has yet to demonstrate that Saca, a high-level official, has unique knowledge of the issues in the case. Further, it has failed to show that the information sought has been pursued unsatisfactorily through less intrusive means, such as deposing Rosario and Teermat, who appear to have personal and specific knowledge of said information. Judges in this and other districts have noted that "even when a high-ranking official of a corporation does have direct knowledge of the facts, it is inappropriate to compel his or her deposition without first deposing lesser-ranking employees who have more direct knowledge of the facts at issue." *See* Sun Capital Partners, Inc. v. Twin City Fire Ins. Co., 310 F.R.D. 523, 527-28 (S.D. Fla. 2015) (*citing* Stelor Productions, Inc. v. Google, Inc., No. 05-80387-CIV, 2008 WL 4218107, at *4 (S.D. Fla. Sept. 15, 2008)); *see also* Tillman v.

Advanced Pub. Safety, Inc., No. 15-CV-81782, 2017 WL 679980, at *3 (S.D. Fla. Feb. 16, 2017) (finding that plaintiff could not establish "good cause for taking an apex deposition without first deposing [lower-ranking employees], who could possibly have additional information about [p]laintiff's [claim].").

   3.   Undue Burden

Lastly, Saca argues that taking time off from his current role as President and Executive Director of LUMA Energy to prepare for and testify at a deposition would cause an undue burden and hardship. Saca emphasizes that he oversees "the operations of the company that operates and administrates the electrical transmission and distribution system for over 1.5 million customers in Puerto Rico". (Docket No. 229-1 at 2). While LUMA Energy is a private corporation, via government contract, it oversees the operations and management of the Puerto Rico Electric Power Authority, which is one of the largest public power utilities in the United States and is the only electrical energy distributor in Puerto Rico. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 7 F.4th 31, 34 (1st Cir. 2021).

Again, "[v]irtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." Celerity, Inc. v.

Ultra Clean Holding, Inc., 2007 WL 205067 at 3 (N.D. Cal. 2007). In addition, the Court also takes into consideration that Saca is not a party to this case and concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs for discovery. Cascade Yarns, Inc. v. Knitting Fever, Inc., 755 F.3d 55, 59 (1st Cir. 2014). *See also* Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st. Cir. 1998). Therefore, allowing the deposition absent a showing that Saca possesses first-hand, unique relevant knowledge and without exhausting other discovery methods, would certainly cause an undue burden by significantly disrupting his managerial responsibilities.

### IV. CONCLUSION

Based on the preceding facts and law, the Court finds good cause to issue a protective order precluding the taking of Saca's deposition at this time. Accordingly, the Court **GRANTS** Saca's Motion to Quash. Plaintiff must first attempt to request the information sought through the deposition of Rosario and Teermat or through other less intrusive discovery methods. This ruling is made without prejudice to the Plaintiff's ability to request the deposition again at another time —before discovery culminates on July 26, 2024- if Plaintiff can demonstrate that Saca possesses

unique personal knowledge that goes beyond what is revealed during discovery.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, February 5, 2023.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE